The STATE of Ohio, Appellant,

v.

PAXTON, Appellee.

[Cite as *State v. Paxton* (1992), 83 Ohio App.3d 818.]

Court of Appeals of Ohio,
Lucas County.

No. L–92–037.

Decided Nov. 20, 1992.

*J. Christopher Anderson,* Assistant Lucas County Prosecuting Attorney, for appellant.

*Norman Zemmelman,* for appellee.

---

ABOOD, Judge.

This is an appeal from a judgment of the Lucas County Court of Common Pleas, which granted in part and overruled in part appellee William L. Paxton's motion to suppress. Appellant, the state of Ohio, has appealed setting forth the following assignments of error:

"1. The trial judge erred in finding that the Fourth Amendment is applicable in the present case, since the defendant-appellee did not have a legitimate expectation of privacy in the area searched or the items seized.

"2. The trial judge abused her discretion by not considering all of the evidence in determining her opinion on the motion to suppress."

The facts giving rise to this appeal are as follows. On April 11, 1991, the Lucas County Grand Jury returned an indictment which charged appellee with eight counts of recklessly operating and maintaining a solid waste facility without a license, in violation of R.C. 3734.05(A)(1) and 3734.99(A), an unclassified felony. Each count of the indictment set forth a specific date on which the state claimed a violation of those sections occurred: January 15, 1991; January 18, 1991; January 22, 1991; February 25, 1991; February 26, 1991; February 27, 1991; March 5, 1991 and March 15, 1991. A bill of particulars identified the alleged solid waste facility as Paxton Recycling located at 600 Cleveland Avenue and 2519 N. Michigan Avenue, in Toledo, Ohio. Two amended bills of particulars further detailed the nature of the violations charged.

Appellee filed two motions to dismiss: one challenged the sufficiency of the indictment and the other challenged the constitutionality of the statute upon which the charges were based. Both motions were denied by the trial court.

On May 29, 1991, appellee filed a motion to suppress "all evidence, oral or tangible, of any statements made by the defendant and items seized pursuant to warrantless searches during the period beginning January 15, 1991 and ending March 15, 1991." In support of his motion appellee alleged that searches of the properties at 600 Cleveland Avenue and 2519 N. Michigan Avenue were conducted by an inspector from the Toledo Health Department without a warrant, without emergency or exigent circumstances, and without a good-faith reliance upon a statute. On September 23, 1991, a hearing was held on the motion to suppress.

At the hearing, testimony was taken from two individuals, David Hohenberger, a licensed professional land surveyor for the city of Toledo, and Dale Hertzfeld, an inspector/sanitarian with the Toledo Health Department.[1] Hohenberger testified that on August 28, 1991, he, along with two other city employees, went to 2519 N. Michigan and 600 Cleveland Avenues to conduct a survey in order to establish city of Toledo boundary lines and to locate the Champlain Street right of way through appellee's property. Hohenberger testified that on that day he went first to appellee's office to inform him of the purpose of his visit. In response, appellee nodded and made no objection. They then proceeded further onto the property to conduct the survey, which included establishing the Champlain Street right of way and marking it with lath stakes and green paint. Hohenberger testified that Hertzfeld arrived approximately four hours after he did and, from the right of way, took a video of the property. During Hohenberger's testimony, the video was played and he testified that it accurately reflected their activities in the area on that date.

Hertzfeld then testified that, as an inspector with the Toledo Health Department, his responsibilities include inspecting demolition disposal sites, sanitary landfills, swimming pools, mobile home parks, marinas and individual properties. He stated that such operations are inspected prior to licensing and then on a regular follow-up basis and that both licensed and unlicensed properties are inspected in response to complaints made. Hertzfeld stated that, during the relevant time period, the property at 600 Cleveland and 2519 N. Michigan Avenues was not licensed as a demolition disposal facility, a solid waste disposal facility or a transfer station.

Hertzfeld testified that his first inspection of appellee's property at Cleveland and Michigan Avenues was on January 15, 1991 when he went there with Gassen Tofla, an engineer with the Ohio Environmental Protection Agency, in response to a complaint Tofla had received that appellee was burying garbage, trash and demolition materials on the property. They drove onto the property, went to appellee's office, identified themselves and why they were there, and told him that they were going to look around and take some pictures and videos, to which appellee "was most agreeable." They then walked out onto the property and took the videos. Hertzfeld stated that what he saw on appellee's property and which was depicted on the tape was all out in the open, or an "open working face," with no attempt at concealment. Hertzfeld went back to the property a day or two later to give appellee an order to cease all dumping and to remove all garbage, trash, rubbish and debris.

---

1. The trial court's opinion on the motion to suppress incorrectly states that only one witness, Dale Hertzfeld, testified at the hearing on the motion.

Hertzfeld returned to appellee's property on March 5, 11, and 18, taking videos each time. Although Hertzfeld stated that he does not recall speaking with appellee on each occasion, he thought that he always spoke with either appellee or his employees, many of whom carry walkie-talkies and, he believes, informed appellee of his presence. As to the March 5 visit he stated that he believes he let appellee know that he was there and that he was collecting water samples from the pond to check for contaminants. Hertzfeld stated that appellee was always agreeable to his being on the property, never told him he could not enter, never requested that he leave and was always cooperative. Hertzfeld testified that on August 28 he drove onto the property without appellee's permission and joined the survey crew, which included David Hohenberger, where he took a final video.

During his testimony, Hertzfeld explained that appellee's property had two vehicle entrances, one off Columbus Avenue by appellee's office and another off Cleveland Avenue. Hertzfeld testified further that, since it is not fenced, there are a number of other ways to very easily get onto appellee's property without a vehicle. He also stated that there are many trails going into the area and onto the site that had been cut by children playing on all-terrain vehicles and motor bikes and that there is an abandoned railroad right of way through the property. During this testimony Hertzfeld referred to several aerial photos of the property.

At the conclusion of the hearing, all of the state's exhibits, including the photographs and videos, were admitted into evidence with no objection by appellee. The trial court withheld its decision pending the filing of briefs by the parties.

On November 8, 1991, appellant filed its memorandum in opposition to appellee's motion to suppress. Appellant argued that two exceptions to the search warrant requirement applied and therefore the actions of the health department in inspecting appellee's property did not violate appellee's Fourth Amendment rights. First, appellant argued that Hertzfeld had testified that on each of his investigations of appellee's property he announced and explained his presence and that appellee never objected or refused him access and therefore appellee freely and voluntarily consented to Hertzfeld's presence. Second, appellant asserted that, due to the nature of the property, appellee could not legitimately demand privacy for his actions thereon since they were conducted out of doors, in open areas comparable to "open fields," with no security, no fences, and no no-trespassing warnings. Appellant submitted that pursuant to the open fields doctrine of *Oliver v. United States* (1984), 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214, the Fourth Amendment does not extend to protect such areas, even when a trespass has been committed.

On November 22, 1991, appellee filed an additional memorandum in support of his motion to suppress in which he pointed out that Hertzfeld was only on the

premises with his consent on January 15, 1991, and appellant had not demonstrated by clear and positive evidence that he had freely and voluntarily consented to Hertzfeld's entrance onto the premises on any other occasion. Appellee also argued that Hertzfeld had failed to conduct his inspections in accordance with R.C. 3714.08 [2] and 3734.07,[3] which permitted inspection only with consent or

---

2. R.C. 3714.08 provides in pertinent part:

"(A) At least annually, the board of health of a health district or the director of environmental protection shall cause each construction and demolition debris facility for which the board or the director, as appropriate, issued a license under section 3714.06 of the Revised Code to be inspected and shall cause a record to be made of each inspection. The board or the director shall require each such facility to be in substantial compliance with this chapter and rules adopted under it.

"(B) Within thirty days after the issuance of a license, the board of health shall certify to the director of environmental protection that the construction and demolition debris facility has been inspected and is in substantial compliance with this chapter and rules adopted under it. Each board of health shall provide the director with such other information as he may require from time to time.

"(C) The board of health or its authorized representative and the director or his authorized representative, upon proper identification and upon stating the purpose and necessity of an inspection, may enter at reasonable times upon any public or private property, real or personal, to inspect or investigate, obtain samples, and examine or copy records to determine compliance with this chapter and rules adopted under it. The board of health or its authorized representative or the director of his authorized representative may apply for, and any judge of a court of record may issue, an appropriate search warrant necessary to achieve the purposes of this chapter and rules adopted under it within the court's territorial jurisdiction. If entry is refused or inspection or investigation is refused, hindered, or thwarted, the board of health or the director may suspend or revoke the construction and demolition debris facility's license."

3. R.C. 3734.07 provides in pertinent part:

"(A) Before a license is initially issued and annually thereafter, or more often if necessary, the board of health shall cause each solid waste facility and infectious waste treatment facility to be inspected and a record to be made of each inspection and shall require each solid waste facility and infectious waste treatment facility in the health district to be in substantial compliance with this chapter and the rules adopted under it.

"(B) Within thirty days after the issuance of a license, the board of health shall certify to the director of environmental protection that the solid waste facility or infectious waste treatment facility has been inspected and is in substantial compliance with this chapter and the rules adopted under it. Each board of health shall provide the director with such other information as he may require from time to time.

"(C) The board of health or its authorized representative and the director or his authorized representative, upon proper identification and upon stating the purpose and necessity of an inspection, may enter at reasonable times upon any private or public property, real or personal, to inspect or investigate, obtain samples, and examine or copy any records to determine compliance with this chapter. The board of health or its authorized representative or the director or his authorized representative may apply for, and any judge of a court of record may issue, an appropriate search warrant necessary to achieve the purposes of this chapter within the court's territorial jurisdiction. If entry is refused or inspection or investigation is refused, hindered, or thwarted, the board of health may suspend or revoke the operating license of the solid waste facility or infectious waste treatment facility that refused entry, or the director may suspend or revoke the license or permit of the solid waste facility, hazardous waste facility, or infectious waste treatment facility that refused entry."

pursuant to a search warrant, and had failed to disclose that his March visits were conducted to gather evidence pursuant to a criminal complaint. As to appellant's arguments that the open fields doctrine of *Oliver* was applicable, appellee argued that *Oliver* dealt with residential premises as opposed to business premises and that there has been no express application of the open fields doctrine to a commercial property.

On January 21, 1992, the trial court filed its judgment entry. In its decision the trial court stated that appellee "operates a business primarily engaged in recycling and disposal of demolition debris." The court then stated that Hertzfeld, as a department of health sanitarian, had a statutory right to inspect the facility pursuant to R.C. 3714.08, and that such administrative searches were to be done with consent or pursuant to a search warrant. The trial court found that appellee had consented only to the initial visit on January 15, 1991 and that as to the visits of March 5, March 11, March 18, and August 28, 1991, Hertzfeld's testimony did not affirmatively establish by a totality of the circumstances that consent was obtained prior to his entry onto the property. As to appellant's "open fields" argument, the trial court acknowledged the open fields doctrine of *Oliver*, but noted that *Oliver* involved a search of a field lying beyond the curtilage of *residential premises* and therefore beyond the area where an individual could legitimately demand privacy. The trial court then stated, quoting *Katz v. United States* (1967), 389 U.S. 347, 360, 88 S.Ct. 507, 516, 19 L.Ed.2d 576, 587, that "the touchstone of the Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.'" The trial court ultimately held:

" * * * [D]efendant's motion is granted in part and overruled in part. Evidence obtained from the initial consent search on January 15, 1991 is admissible as being obtained by defendant's consent. Evidence obtained on the March visits must be suppressed because the State failed in its burden to establish consent or that the search was supported by the warrant required by statute. The 'open fields' exception does not apply since the property surrounded a commercial facility. Finally, since the Paxton property was improperly entered in order to videotape August 28, 1991, the videotape of that date must also be suppressed."

On January 24, 1992, appellant filed a notice of appeal.

In its first assignment of error, appellant asserts that the trial court erred in finding that the Fourth Amendment was applicable to the facts herein, since appellee did not have a legitimate expectation of privacy in the areas searched or the items seized. Appellant argues, as it did in opposition to the motion to suppress, that due to the characteristics and nature of the areas inspected, the open fields doctrine is applicable and the fact that the department of health may have trespassed onto appellee's property is irrelevant.

Appellee argues in response that the area in question does not fall within the definition of "open fields" and that the premises involved is clearly bounded by marked boundaries, is not easily accessible, and is the working commercial complex of appellee's business, which is protected by the Fourth Amendment.

The issue raised by appellant's first assignment of error is whether the open fields doctrine applies to those areas of appellee's business premises which were inspected and photographed by Hertzfeld, thereby excluding them from Fourth Amendment protection.

The open fields doctrine was first enunciated by the United States Supreme Court in *Hester v. United States* (1924), 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898, wherein the court found that, even though there had been a trespass by police officers, their testimony as to what they observed taking place outside the defendant's home was not obtained by an illegal search or seizure, since the Fourth Amendment protection accorded to people in their "persons, homes, papers, and effects" is not extended to "open fields." *Id.* at 59, 44 S.Ct. at 446, 68 L.Ed. at 900.

In *Oliver v. United States*, the United States Supreme Court reaffirmed its holding in *Hester* in two cases. In the first case, narcotic agents, acting on information that marijuana was being grown on Oliver's farm, went to the farm to investigate. They drove past the house to a locked gate with a "no trespassing" sign on it, followed a foot path around one side of the gate and along the road, and, about one mile from the home, found a field of marijuana. The District Court suppressed the evidence of the discovery of the field stating that, pursuant to *Katz v. United States*, Oliver had a reasonable expectation of privacy that the field would remain private and that it was not an open field that invited casual intrusion. The court of appeals reversed, holding *Katz* had not impaired the vitality of the open fields doctrine of *Hester*.

In the second case, police officers acting on a tip that marijuana was being grown in the woods behind a residence, entered the woods by a path between the residence in question and a neighboring home and followed the path to two marijuana patches fenced in with chicken wire and posted with "no trespassing" signs. The officers obtained a search warrant and returned and seized the marijuana. The trial court suppressed the evidence, holding that the initial warrantless search was unreasonable since the "no trespassing" signs and secluded location evinced a reasonable expectation of privacy and therefore the open fields doctrine did not apply. The Maine Supreme Court affirmed the decision.

The *Oliver* court held that the open fields doctrine applied in both cases. In so holding, the *Oliver* court, after reviewing the decisions in *Hester* and *Katz*, concluded that government intrusion upon open fields is not an "unreasonable

search" as proscribed by the Fourth Amendment. *Id.,* 466 U.S. at 177, 104 S.Ct. at 1740, 80 L.Ed.2d at 223. The court stated:

" * * * [T]he Rule of *Hester v. United States, supra,* that we reaffirm today, may be understood as providing that an individual may not legitimately demand privacy for activities conducted out of doors in fields, except in the area immediately surrounding the home." 466 U.S. at 178, 104 S.Ct. at 1741, 80 L.Ed.2d at 224.

The court found that rule to be consistent with the right of privacy embodied in the Fourth Amendment, reasoning that:

" * * * [O]pen fields do not provide the setting for those intimate activities that the Amendment is intended to shelter from government interference or surveillance. There is no societal interest in protecting the privacy of those activities, such as the cultivation of crops, that occur in open fields. Moreover, as a practical matter these lands usually are accessible to the public and the police in ways that a home, an office, or commercial structure would not be. It is not generally true that fences or 'No Trespassing' signs effectively bar the public from viewing open fields in rural areas. * * * For these reasons, the asserted expectation of privacy in open fields is not an expectation that 'society recognizes as reasonable.'" (Footnotes omitted.) 466 U.S. at 179, 104 S.Ct. at 1741–1742, 80 L.Ed.2d at 224–225.

The *Oliver* court explicitly rejected the suggestion that steps taken to protect privacy establish that expectations of privacy in open fields are legitimate:

"It is true, of course, that petitioner Oliver and respondent Thornton, in order to conceal their criminal activities, planted the marihuana upon secluded land and erected fences and 'No Trespassing' signs around the property. And it may be that because of such precautions, few members of the public stumbled upon the marihuana crops seized by the police. Neither of these suppositions demonstrates, however, that the expectation of privacy was *legitimate* in the sense required by the Fourth Amendment. The test of legitimacy is not whether the individual chooses to conceal assertedly 'private' activity. Rather, the correct inquiry is whether the government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment. As we have explained, we find no basis for concluding that a police investigation of open fields accomplishes such an infringement." (Footnote omitted and emphasis *sic.*) 466 U.S. at 182–183, 104 S.Ct. at 1743, 80 L.Ed.2d at 226–227.

The court concluded that, even if the government's intrusion upon an open field is a trespass at common law, it is not a search in the constitutional sense, since property rights protected by the common law of trespass have little or no

relevance to the application of the Fourth Amendment. *Id.* at 183–184, 104 S.Ct. at 1743–1744, 80 L.Ed.2d at 227–228.

In this case, the trial court, in addressing the application of the open fields doctrine, acknowledged the doctrine, stated that Fourth Amendment protection extends to commercial premises as well as residential, but found that "[t]he 'open fields' exception does not apply since the property surrounded a commercial facility."

The trial court reasoned that, while the United States Supreme Court has upheld certain warrantless administrative inspections of private commercial property, it has done so where statutory regulations provide adequate constitutional safeguards for administrative inspections. The trial court concluded that, since Ohio has mandated a procedure for the health department to follow by the enactment of R.C. 3714.08 and that procedure requires consent or a search warrant before an administrative search may be conducted, Hertzfeld's investigations of appellee's property without consent and without a warrant were unlawful, and the evidence gathered must be suppressed.

■ First, with regard to the statutory provisions relied on by the trial court, we find that these provisions are not applicable to the facts of this case. R.C. Chapter 3714 deals with the licensing of facilities for the disposal of construction and demolition debris and the inspection requirements for such facilities prior to licensing, upon an application for a license and subsequent to licensing. After reviewing R.C. Chapter 3714, we find that the specific section relied on by the trial court, R.C. 3714.08, clearly refers to the inspection and investigation of *licensed* facilities. The record in this case, however, indicates that appellee's facility at 600 Cleveland Avenue and 2519 N. Michigan Avenue had no license or permits issued to it by the Toledo Department of Health.[4]

Upon consideration of the foregoing, this court finds that R.C. 3714.08 is not applicable to the facts of this case and the trial court erred as a matter of law by finding that Hertzfeld was required to comply with the provisions of R.C. 3714.08 in his investigation of appellee's premises and in suppressing the videotapes taken on the basis that these provisions were not followed. Having made that

---

4. We note that appellee was indicted for violations of R.C. 3734.05, operating a *solid waste facility* without a license, and not for violation of R.C. Chapter 3714. The trial court, in the first sentence of its January 2 opinion and journal entry, stated that appellee operates a business primarily engaged in recycling and disposal of demolition debris, and was indicted for operating and maintaining a solid waste facility without a license. Apparently, the trial court applied the provisions of R.C. Chapter 3714 governing demolition disposal facilities, due to its determination of the nature of appellee's business. However, as we have already stated, the record demonstrates that appellee was not licensed to operate a demolition disposal facility. We would also note that the inspection provision of R.C. 3734.07 is virtually identical to that of R.C. 3714.08 and refers to the inspection or investigation of a licensed facility.

finding, we must now determine if Fourth Amendment protection extends to appellee's outdoor commercial premises or if the open fields doctrine applies to exclude these premises from Fourth Amendment protection.

The trial court correctly found that Fourth Amendment protections do extend to businesses. In *See v. Seattle* (1967), 387 U.S. 541, 546, 87 S.Ct. 1737, 1741, 18 L.Ed.2d 943, 948, the United States Supreme Court held that an administrative entry upon commercial premises not open to the public may only be compelled "through prosecution or physical force within the framework of a warrant procedure." The *See* case, however, is distinguishable from this case since it involved a fire department's warrantless entry into and inspection of a *locked commercial warehouse. Id.* at 541, 87 S.Ct. at 1738, 18 L.Ed.2d at 945. In this case the record specifically shows that there was no entry into or inspection of any of the structures on appellee's premises, but only of the "open working face." The issue then becomes whether Fourth Amendment protection extends to these areas as well.

In *Air Pollution Variance Bd. of Colorado v. W. Alfalfa Corp.* (1974), 416 U.S. 861, 94 S.Ct. 2114, 40 L.Ed.2d 607, the United States Supreme Court specifically applied the open fields doctrine to outdoor commercial property. In that case, a state health inspector entered the corporation's outdoor premises, in daylight, without consent and without a warrant, and conducted opacity tests of smoke being emitted from the corporation's chimneys. The Colorado Air Pollution Variance Board found that the emissions violated the state Act, denied the corporation a variance and entered a cease and desist order. The county district court set aside the board's order and the Colorado Court of Appeals affirmed that decision, citing *See, supra,* and holding that the act of conducting the tests on the premises of the corporation without either a warrant or consent from anyone in the corporation constituted an unreasonable search within the meaning of the Fourth Amendment. *W. Alfalfa Corp., supra,* 416 U.S. at 864, 94 S.Ct. at 2115, 40 L.Ed.2d at 610. The United States Supreme Court reversed, finding that the *See* decision was inapplicable, since the inspector did not enter the plant or offices but rather based his citation on what anyone in the city who was near the plant could see. *W. Alfalfa Corp., supra,* at 865, 94 S.Ct. at 2115–2116, 40 L.Ed.2d at 611. The court noted that "[t]he field inspector was on respondent's property but we are not advised that he was on premises from which the public was excluded," and found that the inspector was well within the open fields exception to the Fourth Amendment. *Id.*

In two cases dealing with residential premises, the open fields doctrine of *Hester* and *Oliver* was applied to permit warrantless searches and seizures despite the owners' assertions that the areas searched were an essential part of business or commercial enterprises and therefore protected by the Fourth

Amendment. See *United States v. Dunn* (1987), 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326,[5] and *McDowell v. United States* (C.A.8, 1967), 383 F.2d 599.[6] The *McDowell* court in so holding stated that:

"The contention of appellants that the fields were entitled to the protection of the Fourth Amendment as being within the curtilage of a commercial enterprise is without merit. Although the Supreme Court has recently expanded the Fourth Amendment protection of the business enterprise, *See v. City of Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), it has not expanded such protection beyond that which a private dwelling and the curtilage thereof is likewise entitled. Therefore, a search of open fields, without a search warrant, even if such fields are construed as part of a commercial enterprise, is not constitutionally 'unreasonable.'" *Id.* at 603.

We have thoroughly reviewed the record of proceedings before the trial court, including the testimony, the videos, the aerial photos taken of the premises, and the other exhibits offered at the hearing on the motion to suppress. Upon consideration thereof, this court finds that (1) the area that was inspected by Hertzfeld extends outside and a distance from appellee's office and other buildings, is completely open and exposed, even though bounded by woods, brush and water, and is easily accessible to the public; (2) the nature of the activity conducted on appellee's premises, the dumping and/or disposing of debris and garbage, is not one for which appellee could reasonably demand or expect privacy, or one in which society has an interest in protecting, *Oliver, supra;* (3) the open fields doctrine is applicable herein and, therefore, Fourth Amendment protection is not extended to those areas of appellee's premises that were entered, inspected and videotaped by Hertzfeld, regardless of whether his entries onto appellee's premises constituted trespasses; and (4) the trial court erred in suppressing the evidence acquired by Hertzfeld during his inspections. Accordingly, appellant's first assignment of error is well taken.

In its second assignment of error, appellant asserts that the trial court abused its discretion by not considering all of the evidence in ruling on the motion to

---

5. In *Dunn*, drug enforcement agents entered onto a ranch by crossing over several barbed wire perimeter fences, then crossed over a wooden fence in front of a barn located sixty yards behind the ranch house and shined a light into the barn door observing what they believed to be a drug laboratory. They returned later with a search warrant.

6. In *McDowell*, the appellant operated a three-thousand acre farm adjacent to a federal game preserve. *McDowell* closed off his ranch with "no hunting" and "no trespassing" signs, but for a fee permitted hunting of geese and ducks. Federal game agents who had received tips of baiting on McDowell's property undertook surveillance of some of his fields, found evidence of baiting, observed the hunting, and entered the farm area, confiscating a dead goose, and took names and numbers of hunters, pictures of the fields, and corn samples.

suppress. Specifically, appellant argues that the trial court considered only Hertzfeld's testimony and not that of David Hohenberger, the surveyor. Appellant argues that the record demonstrates that the survey of appellee's property on August 28, 1991, was consented to by appellee himself and that it was during this survey that Hertzfeld videotaped appellee's premises, from city property.

Upon consideration of our ruling on appellant's first assignment of error, appellant's second assignment of error is rendered moot and therefore not well taken.

Upon consideration whereof, the judgment of the trial court granting appellee's motion to suppress is reversed. This case is remanded to the trial court for further proceedings not inconsistent with this court's decision. Costs assessed to appellee.

*Judgment reversed*
*and cause remanded.*

GLASSER, P.J., and MELVIN L. RESNICK, J., concur.