This case is before us on the appeal of the City of Dayton from a decision granting the Defendant's motion to suppress. In support of its appeal, the City presents the following assignments of error:
I. The trial court committed prejudicial error in suppressing evidence obtained by a police officer where the officer had witnessed probable cause of disorderly conduct and, further, where the appellee threatened to let his Rottweiler dogs attack the police.
II. The trial court committed prejudicial error in suppressing all the evidence in this case where the Appellee's conduct which gave rise to the disorderly conduct charge occurred prior to the officer's entry onto the business premises and where, even assuming arguendo an unlawful entry, the assaultive behavior and force is not subject to suppression.
Upon consideration of the assignments of error, we find the second assignment of error well-taken. While a police officer did unlawfully enter the Defendant's premises, the Defendant's choice, to continue engaging in disorderly conduct and to resist arrest, if true, was not the product of the unlawful entry. Accordingly, the suppression decision is vacated and this case is remanded for further proceedings.
 I
On October 2, 1997, complaints were filed in the Dayton Municipal Court, charging Royce Trammel with disorderly conduct and resisting arrest. These charges arose from an incident that occurred on October 1, 1997. After the complaints were filed, Trammel moved to suppress any and all evidence and statements that he made. This motion was based on the fact that the evidence was the product of an illegal search and seizure. According to the testimony at the suppression hearing, Dayton Police Officers Rogers and Beall were on Wildwood Avenue in Dayton, Ohio, on October 1, 1997, to look for a wanted subject. Two days earlier, the officers had been to 1154 Wildwood looking for the same individual, who was a white male with brown shoulder length hair. Their original visit was based on information that the subject was working on a truck at that location. An excavating business owned by Royce Trammel, and Royce's father, Leroy, is located at 1154 Wildwood. The property itself is surrounded by a chain link fence and is guarded by two Rottweiller dogs.
On the first day that the officers arrived at the premises, they received permission to search. However, they did not find the person for whom they were looking. Two days later, they returned, but no one was there. While Rogers and Beall walked down Wildwood Avenue on the day of the second visit, a red pickup truck containing one Hispanic male and two black males pulled into the driveway of 1154 Wildwood. One of the men, Royce Trammel, got out of the truck and started to unlock the gate. The Rottweiller dogs were inside the fenced area at the time.
From this point on, the testimony differs. The two officers gave essentially the same account, but their story was contradicted by the testimony of an elderly woman who lived across the street. According to the officers, when Trammel unlocked the gate, he told the officers that they had better step back because the dogs would attack them (profanities omitted). What appears to be a show of posturing ensued, with Officer Rogers pulling his weapon and threatening to shoot the dogs if they attacked, followed by more profanity from Trammel and comments that the police were not going to shoot his dogs. When Trammel opened the gate, the dogs stayed in the fenced area. The truck was then driven into the lot, and Trammel closed the gate. However, Trammel continued to yell profanities at the police. Since Trammel had mentioned that the dogs were vicious, Officer Beall asked if the dogs had a license. No licenses were apparently visible. Because Trammel refused to show the police the dog licenses, Officer Rogers then walked to the patrol car to call animal control. While Rogers was gone, Beall stood outside the fence and Trammel sat inside, on the hood of the truck. When Trammel uttered another profanity, Beall told him that he was going to issue a citation for disorderly conduct if Trammel continued to yell and cuss. After Trammel told Beall to get off his sidewalk, again using profanity, Officer Beall opened the gate and entered the property.
Although the fence had prominent signs that said, "no trespassing," and "warning, security dog," neither Beall nor Rogers could recall seeing any signs. Beall's purpose when entering was to give Trammel a minor misdemeanor citation for disorderly conduct. After Beall was inside, Trammel refused to provide identification and continued to curse, even after being told he would be arrested if he did not show identification. Eventually, when Trammel did not stop cursing, Beall grabbed Trammel and placed him under arrest. A wrestling match then ensued.
During the suppression hearing, Beall admitted that he had no warrant for Trammel or any of the other gentlemen with Trammel. Beall also admitted that he knew the three men did not match the description of the suspect he was seeking. Both officers also admitted during the hearing that no emergency existed and that nothing prevented them from getting either an arrest or a search warrant.
In contrast to the officers' testimony, the testimony of Bertha Houston, who lived across the street from the Trammel property, was as follows. On October 1, 1997, Houston was sitting on her enclosed porch and saw two officers walking up the street. Houston knew the officers were looking for a white man because they had been in the neighborhood the day before. Houston saw Royce Trammel and two other men in a truck getting ready to go into the lot on the Trammel property. At this time, the two officers were standing on the steps of the Trammel property, next to the fence. When the truck was ready to go in the gate, Trammel got out to unlock the gate. While Trammel was unlocking the gate, one of the officers said that if the dog came out, he would shoot it. The officer had his gun out at the time. Houston denied hearing Trammel threaten the officers before this comment was made, or at any time.
After the truck drove onto the property, Trammel closed the gate. At this point, Houston heard one of the officers ask if the dogs had tags. According to Houston, Trammel asked the police why they were "messing" with him, as he had not done anything. One of the officers then left, and Houston heard the remaining officer constantly replying back to Trammel about the dogs, asking if they had tags. Royce responded that the dogs did not have tags. Houston also heard the officer ask Trammel for identification, but Trammel said he did not have identification with him. Again, Trammel asked the officer why the officer was "messing" with him.
At this time, the officer said he was "coming in" and opened up the gate. Houston called out to the officer to tell him that she could identify Trammel, but the officer never looked over at her. After the officer went in the gate, Trammel continued to tell the officer to leave him alone and to say he had done nothing. Trammel also told the officer that it was private property. However, the officer just continued walking.
After the hearing, the trial court sustained the motion to suppress. The court's decision is somewhat brief, and concludes as follows:
 Based on the testimony and evidence at the hearing, the court finds that the particular alleged criminal act did cause, create, exigent circumstances, and that exigent circumstances did not exist at the time. Under the circumstances, it appears to the court, absent a warrant, that a warrantless intrusion was not justified.
Apparently, the trial court made a clerical error in its entry, as the parties agree that the trial court found that exigent circumstances did not exist. Consequently, for purposes of our discussion, we assume this to be the trial court's decision, despite the language in the entry.
As we noted above, in the first assignment of error, the City contends that Officer Beall had probable cause based on his observation of Trammel's disorderly conduct and on the threats Trammel made to let his dogs attack the officers. The City's initial position is that Trammel does not have any Fourth Amendment rights because he was outside and "curtilage" protection does not extend to business premises. Additionally, the City argues that an officer who observes the commission of a crime in his presence may enter private property to make an arrest. Specifically, the City contends that the crimes the officers saw were violations of R.C. 2903.21 (causing others to believe the defendant will cause them serious physical harm) and violations of R.C. 2903.11(A)(2) and (B) and R.C.2903.22(A)(2) and (B) (attempting to cause harm to a police officer).
In reviewing a trial court's ruling on a motion to suppress, we accept the trial court's findings of fact "if they are supported by competent, credible evidence." State v.Retherford, (1994), 93 Ohio App.3d 586, 592, discretionary appeal overruled, 69 Ohio St. 1488. Then, [a]ccepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." Id (citations omitted). In addition, "when we weigh the court's legal determinations, 'we will indulge all reasonable presumptions consistent with the record in favor of [the] lower court.'"State v. Coppock, (1995), 103 Ohio App.3d 405, 412 (citation omitted). As a final matter, no abuse of discretion will be found unless the record is "devoid of competent, credible evidence." Id.
As we mentioned, the City's initial argument is that Fourth Amendment protections do not even exist in this case because Trammel was outside, in a chain-link fenced area of his business, at the time he was arrested. According to the City, the only outside area warranting Fourth Amendment protection is the "curtilage" of the home. However, we disagree. First of all, using "curtilage" in connection with commercial premises is somewhat of a misnomer since the term typically is associated with the yard or enclosed space surrounding a dwelling house. See, Webster's Third New International Dictionary (1981) 558 and Black's Law Dictionary (4 Ed. Rev. 1968) 460. As we noted in State v. Staton (March 15, 1991), Greene App. No. 90-CA-62,
 At common law, the curtilage was the area to which extended the intimate activity associated with the sanctity of a man's home and the privacies of life and therefore had been considered part of the home itself for Fourth Amendment purposes. Thus courts have extended Fourth Amendment protection to the curtilage, and they have defined the curtilage, as did the common law, by reference to the factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private. * * * For most homes, the boundaries of the curtilage will be clearly marked; and the conception defining the curtilage — as the area around the home to which the activity of home life extends — is a familiar one easily understood from our daily experience.
Id. at p. 3 (citation omitted).
We do note that "curtilage" has been used in search warrant situations to designate the area surrounding a commercial property, whether that area be a parking lot or fenced area. See, State v. Zinmeister(1985), 27 Ohio App.3d 313, 320-21, andState v. American Veterans Post No. 250 (1987), 37 Ohio App.3d 108. However, regardless of the designation one wishes to use, we believe that Fourth Amendment protection extends to commercial premises, and can include the grounds surrounding the premises, if the premises fit within the traditional Fourth Amendment analysis, i.e., the area is one in which the owner has a reasonable expectations of privacy. State v. Finnell
(1996), 115 Ohio App.3d 583, 587.
In State v. Penn (1991), 61 Ohio St.3d 720, the Ohio Supreme Court stressed that both the Warrant Clause of the Fourteenth Amendment and Section 14, Article I of the Ohio Constitution protect commercial buildings as well as private homes and offices. The court did not address the issue of the grounds surrounding the business premises in Penn, because the facts involved a warrantless search of a pharmacy, not any area located outside. However, other decisions have considered this issue. For example, in American Veterans Post No. 250, the Ninth District found that Fourth Amendment protections extended to the Amvets' organization, including their parking lot, in the same manner as they would attach to a private home. 37 Ohio App. 3
d at 109. In that particular case, the court found that a warrantless search of the parking lot was proper because the Amvets did not have a reasonable expectation of privacy in the lot. To reach this decision, the court applied the following four-part test set out in United States v. Dunn (1987)480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326:
 [1] The proximity of the area claimed to be curtilage to the home, [2] whether the area is included within an enclosure surrounding the home, [3] the nature of the uses to which the area is put, and [4] the steps taken by the resident to protect the area from observation by people passing by.
Id. at 109. After applying this test, the court found that the Amvets did not have a reasonable expectation of privacy in the parking lot because the parking lot bordered a city street, was not enclosed in any way, could be viewed by any passerby, and could be used by any of the one-hundred fifty Amvets, their guests, and presumably, also, delivery vehicles. Id.
Similarly, in State v. Paxton (1992), 83 Ohio App.3d 818, the court considered whether Fourth Amendment protection extended to areas outside a defendant's commercial premises and at a distance from the defendant's office and other buildings. InPaxton, a Health Department inspector took pictures and videos of the "open working face" of the property, upon which dumping operations were being conducted. An initial visit to the site was made with the owner's consent, but the trial court found that the Health Department Inspector's testimony did not affirmatively establish that later visits were made with consent before entry on the property. The trial court suppressed the evidence from the subsequent visits because the State had neither consent nor a warrant. The trial court also found that the "open fields" doctrine did not apply to property surrounding a commercial facility. Id. at 823.
On appeal, the court noted that Fourth Amendment protections have been extended to businesses, including those areas in which a private dwelling and the curtilage would likewise be given protection. Id. at 827-28. By the same token, the court also felt that the "open fields" doctrine, which is applied to residences, could be used in connection with commercial enterprises. As a result, a search without a warrant of open fields surrounding a business facility would not be constitutionally unreasonable. Id. at 838.
After considering the factual circumstances, the court found the "open fields" exception applicable because the area was completely open and exposed and was easily accessible to the public. In particular, the property was not fenced and many trails went into the area. These trials had been cut by children playing on all-terrain vehicles and motor bikes. Furthermore, the court observed that the nature of the activity conducted, i.e., dumping of debris and garbage, was not one for which the defendant could reasonably demand or expect privacy, nor was it an activity society had an interest in protecting. Id.
Based on the above discussion, we have no doubt that the Fourth Amendment applies to commercial premises, and extends to areas that can be equated with the "curtilage" of a private home. Depending on the circumstances, the area adjacent to commercial enterprises, may, as in Paxton, be considered "open fields," or may fit within the areas traditionally protected by the Fourth Amendment. For purposes of considering if an individual's expectation of privacy is reasonable, the following test has been applied:
 (1) ownership, (2) possession and/or control, (3) historical use of the property, (4) ability to regulate access, (5) subjective anticipation of privacy, (6) objective reasonableness of that anticipation, and (7) the totality of the circumstances.
Finnell (1996), 115 Ohio App.3d 583, 587, citing United Statesv. Gomez (C.A.1, 1985), 770 F.2d 251, 254.
We believe these factors are useful, along with those considered and applied in Paxton. In the present case, Trammel was a co-owner of the property and had the ability to exclude persons from the premises. On the day in question, the commercial property was surrounded by a locked fence, which Trammel unlocked to admit the truck in which he was riding. Additionally, the fence had a "no trespassing" sign and the area was protected from intrusion by two guard dogs. Once Trammel entered the premises, he closed the gate and told the officer not to come on the property. In contrast to the parking lot in American Veterans Post No. 250 and the "open working face" of the garbage dump in Paxton, Trammel's property was surrounded by a locked fence, had "no trespassing" signs, was guarded by security dogs, and was not readily accessible to persons other than the owner, who had to unlock the gate to enter. Although Trammel's property could be viewed from the street, we do not find that factor dispositive. Instead, based on the totality of the circumstances, we find that Trammel had both a subjective and reasonable expectation of privacy in the area attached to his commercial premises. Specifically, this area was much more like the "curtilage" of a private home than it was an "open field." Accordingly, we reject the City's claim that the Fourth Amendment did not apply to the area where Trammel was located at the time of Officer Beall's warrantless intrusion.
The City's second contention in support of the first assignment of error is that an officer is entitled to enter private property and make a warrantless arrest when he sees a crime committed in his presence or is pursing a fleeing felon. As we mentioned above, the "crimes" cited by the City are violation of R.C. 2903.21 (causing others to believe the defendant will cause them serious physical harm) and violation of R.C. 2903.11 (A)(2) and (B) and R.C. 2903.22(A)(2) and (B) (attempting to cause harm to a police officer).
As an initial point, we note that the City's argument is based on a misconstruction of the evidence. Specifically, the decision to enter Trammel's property was not based on Officer Beall's observation of the two felonies cited by the City in its brief. Instead, Officer Beall entered the premises with an intent to cite Trammel for a minor misdemeanor and to obtain identification. In this context, Officer Beall testified that he warned Trammel that continued cussing and yelling would result in a citation for disorderly conduct. This was some time after the officers and Trammel discussed the dogs. Furthermore, when Officer Beall entered the property, he intended to give Royce only a citation for disorderly conduct — not to arrest Trammel for violations of any of the statutes cited by the City. In fact, Officer Beall never testified that Trammel violated these statutes, nor was Trammel ever charged with such violations. The issue, then, is whether Officer Beall violated the Fourth Amendment by entering private business property under the admitted circumstances, i.e., to issue a citation for a minor misdemeanor or to obtain identification.
Under clearly-established law, warrantless searches and seizures are generally considered unreasonable. AL Post 763 v.Ohio Liquor Control Comm. (1998), 82 Ohio St.3d 108, 111
(citations omitted), and State v. Gonsior (1996), 117 Ohio App.3d 481,486. An exception is where probable cause and exigent circumstances exist. See, e.g., State v. Kesler (1996),111 Ohio App.3d 98, 100, citing Payton v. New York (1980),445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639. Exigent circumstances include a limited number of emergency situations like pending danger of injury to others, evidence of flight, imminent destruction of contraband, or hot pursuit of a fleeing felon. See, State v. Applegate (1994), 68 Ohio St.3d 348, 349-50;Kesler, 110 Ohio App.3d at 103; and State v. Jenkins (1995),104 Ohio App.3d 265, 272, discretionary appeal not allowed,74 Ohio St.3d 1462.
In the present case, the trial court's conclusion that there were no exigent circumstances is supported by competent, credible evidence. At the time Officer Beall entered the premises, the defendant was in a fenced area, sitting on the hood of a truck. No one was in danger, as the dogs were admittedly on one side of the fence and the officers were on the other. Further, Officer Beall testified that before he entered the property, one of the other occupants of the truck came up and said, "It's okay. The dogs have been confined now." Additionally, both officers indicated that the defendant was not armed, that they were not in hot pursuit of anyone, and that no evidence was in danger of being destroyed. The arresting officer even said that nothing prevented him from obtaining a search or an arrest warrant. Moreover, at the time Officer Beall entered the gated area, he intended to issue a citation for a minor misdemeanor for disorderly conduct, i.e., a violation of Dayton Revised Code of General Ordinances 137.01(A). However, when Trammel persisted in yelling after the entry, the officer upgraded the charge to a misdemeanor of the fourth degree. See, 137.01(E).
According to the City Ordinances, the maximum penalty for a minor misdemeanor is a fine of no more than $100. See, Dayton Revised Code of General Ordinances 130.99(D). No jail sentence is imposed. In Welsh v. Wisconsin (1984), 466 U.S. 740, 752,104 S.Ct. 2091, 2098-2099, 80 L.Ed.2d 732, 744-745, the United States Supreme Court indicated that the gravity of the underlying offense is an important factor to be considered in deciding if an exigency exists. Thus, in Welsh, the court refused to apply the exigent circumstances exception to the warrant requirement where the police entered the defendant's home without a warrant to arrest him for a non-criminal traffic offense. Welsh has been interpreted as limiting exigent circumstances to serious crimes, not including misdemeanors.Cleveland v. Shields (1995), 105 Ohio App.3d 118, 122, discretionary appeal not allowed, 74 Ohio St.3d 1462. See also,Elyria v. Tress (1991), 73 Ohio App.3d 5, 9, (warrantless entry to arrest for driving under the influence does not fall within exigent circumstances); Blanchester v. Hester (1992), 81 Ohio App.3d 815,818 (minor traffic violation does not justify warrantless entry), and State v. Robinson (1995), 103 Ohio App.3d 490,497 (warrantless entry is not justified by imminent destruction of evidence of offense of minor-misdemeanor drug abuse).
We see little distinction between the circumstances inWelsh and those of the present case. Like the police in Welsh,
Officer Beall's purpose in making a warrantless entry was to cite Trammel for a minor misdemeanor for which no imprisonment was possible. Accordingly, we agree with the trial court that exigent circumstances did not exist. As a result, we find the first assignment of error without merit.
 II
In the second assignment of error, the City claims that the trial court erred in suppressing all the evidence in the case. Although the court's decision is not specific on this point, Trammel did ask in his motion for suppression of all evidence and statements made by the defendant. Consequently, we assume that the court intended, by granting the motion, to suppress all evidence and all statements of Trammel.
In contending that the suppression of all evidence is erroneous, the City makes two main points. First, the City says that conduct giving rise to the disorderly conduct charge occurred before any unlawful entry. Second, the City argues that even if the entry was unlawful, evidence of Trammel's assaultive behavior is not subject to suppression. The City's basis for this latter statement is our own decision in City ofDayton v. Joy (July 2, 1990), Montgomery App. Nos. 11846 and 11847, unreported, which held that the Fourth Amendment cannot be invoked to suppress evidence of a defendant's own unlawful conduct. The City also argues the merits of the unlawful arrest, by contending that the arrest itself was lawful. Specifically, the City says that Officer Beall was permitted to arrest Trammel under R.C. 2935.26 (A)(2) because Trammel refused to show identification.
As a preliminary point, we reject the City's contention about the status of the disorderly conduct charge. As we noted above, before unlawfully entering, Officer Beall intended to issue only a minor misdemeanor citation. However, based on Trammel's conduct after the unlawful entry, Officer Beall upgraded the charge to a fourth degree misdemeanor. This would be consistent with Dayton Revised Code of General Ordinances 137.01(E), which says that "[i]f the offender persists in disorderly conduct after reasonable warning or request to desist, disorderly conduct is a misdemeanor of the fourth degree." Therefore, contrary to the City's claims, conduct giving rise to the increased charge did occur after the unlawful entry
A more important consideration, however, is the effect of suppression. We agree with the City that the trial court erred in suppressing all evidence in the case. Some of the conduct giving rise to the disorderly conduct charge occurred before the unlawful entry, and we believe the City would have been entitled to present that evidence in any event, regardless of any decision on suppression. We express no opinion on the merits of this charge.
Regarding the remaining evidence, including Trammel's conduct after the unlawful entry, we still do not think suppression of the evidence is the proper remedy. In similar circumstances, we have held that the exclusionary rule is not applicable to exclude evidence of independent criminal conduct. State v.Scimemi (June 2, 1995), Clark App. No. 94-CA-58, unreported. InScimemi, the defendant was a passenger in an auto stopped by the police for investigation of a loud muffler. After the car was stopped, the defendant refused to remain in the car. When the police insisted, the defendant made vulgar comments, shoved one of the officers in the chest, and walked away. Subsequently, a scuffle ensued that lasted ten or fifteen minutes and ended only when another officer sprayed mace in the defendant's face. Id. at p. 1. The trial court overruled the defendant's motion to suppress the evidence of his conduct, finding the exclusionary rule inapplicable because the conduct was separate from the offense the officers were investigating. On appeal, we agreed with the trial court. We noted that courts do not use a "but for" test to decide which evidence should be excluded. Id. at 5. Instead, the purpose of the exclusionary rule is to "exclude evidence that is " 'the product of the illegality concerned.' " Id. (citation omitted).
Applying these concepts to the present case, Trammel's arrest would not have occurred "but for "the warrantless entry. However, Trammel's resistance of the arrest, if true, was not the product of the illegal entry. Rather, as inScimemi, the struggle was a independent criminal act. Likewise, Trammel's disorderly conduct, after the illegal entry, but before he was arrested, does not appear to be the product of the illegal entry. If one accepts Officer Beall's testimony, it was Trammel's choice to continue to engage in disruptive conduct after the entry. Consequently, we do not believe that evidence of Trammel's conduct after the unlawful entry should have been suppressed. Again, our decision does not mean we accept the testimony of the officers, nor do we express an opinion on the merits of the charges against Trammel. We also note that we continue to adhere to the Joy decision. AlthoughJoy and Scimemi focus on somewhat different points, both opinions reach essentially the same conclusion, i.e., that a defendant cannot use the exclusionary rule to avoid his own independent, wrongful conduct.
Finally, in response to the City's argument that Officer Beall committed, at most, a statutory violation by arresting Trammel for a minor misdemeanor in violation of R.C. 2935.26, we observe that two separate issues are involved in this case: 1) whether Trammel's Fourth Amendment rights were violated by the unlawful entry and arrest; and 2) whether Officer Beall violated R.C. 2935.26 by arresting Trammel for a minor misdemeanor rather than issuing a citation. Thus, the City is incorrect in contending that only a potential statutory violation is involved. We do agree with the City, per its additional citation of authority submitted after oral argument, that First Amendment issues are not implicated in this case, due to the fact that Trammel was charged with making unreasonable noise, not for the content of his speech. See,City of Fairborn v. Grills (June 8, 1994), Greene App. No. 92 CA 92, unreported.
Based on the preceding discussion, the second assignment of error is sustained. Because the trial court erred in suppressing all evidence and statements of the Defendant, the trial court's decision on suppression is vacated and this case is remanded for further proceedings consistent with our opinion.
WOLFF, J., and YOUNG, J., concur.
Copies mailed to:
Mary E. Welsh Mia Wortham Spells Hon. James F. Cannon