United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 21, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No.03-40520
_____

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

ROY JAMES PERRY,

Defendant – Appellant.

_____

Appeal from the United States District Court
for the Eastern District of Texas, Beaumont Division
USDC No. 1:02-CR-47-1
_____

Before JONES, WIENER, and PRADO, Circuit Judges.

PER CURIAM:[1]

Roy James Perry (Perry) was convicted of one-count of manufacturing and possessing with the intent to distribute between 100 and 1,000 marijuana plants under 21 U.S.C. § 841 (a)(1). Perry appeals his conviction, asserting that the district court erred by denying his motion to suppress the marijuana plants and a clipboard seized by law enforcement. For the reasons stated below, we uphold the district court's denial

---

[1]Pursuant to 5th Cir. R. 47.5, this Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

1

of Perry's motion to suppress and affirm his guilty-plea conviction.

**FACTUAL & PROCEDURAL BACKGROUND**

On July 6, 2001, Special Agent Marichael Pope (Special Agent Pope) of the Drug Enforcement Agency (DEA) and other law enforcement officers received a tip that marijuana was being grown in an area off County Road 2331 in Liberty County, Texas. A DEA agent performed an overflight of the area and reported seeing some patches of marijuana growing there. Special Agent Pope then flew over the area in a helicopter to investigate further.

Special Agent Pope testified that, during his aerial search, he observed marijuana plants growing on a tract of brushy, wooded land, which belonged to Perry's family. Special Agent Pope also observed two structures near the plants — one about the size of an outhouse, and the other approximately three times larger. He testified that, from the air, he was able to ascertain that no one inhabited the smaller structure, but was unable to tell if anyone lived in the larger building.

Having concluded that marijuana was being grown in the field, Special Agent Pope landed his helicopter on the property approximately twenty yards from the plants he had seen from the air. He then investigated on foot and confirmed three patches of marijuana were being cultivated with an irrigation system on Perry's property. He also located the two structures he had seen

aerially.  Special Agent Pope stated he was able to determine these buildings were not residences because they were not fully enclosed.  He observed that the smaller shed contained fertilizer, gardening tools, and other plant cultivation products, and the larger shed appeared to house an indoor growing area.

After Special Agent Pope's investigation on the ground, he contacted Sergeant Jack Smith (Sergeant Smith) of the Texas Department of Public Safety (TDPS).  Sergeant Smith arrived and also performed an aerial search of the field.  From the helicopter, Sergeant Smith discerned the marijuana plants, a well, irrigation lines, and sheds on the property.  He testified that, from the air, he observed no structures that were obviously residences, but that he was not certain the larger shed was not a residence until he later entered the property.

Initially, Sergeant Smith refused to enter the property without a warrant.  Sergeant Smith and Special Agent Pope discussed whether a warrant was needed in order to enter the property legally, and sought the advice of an Assistant United States Attorney (AUSA).  Both Special Agent Pope and Sergeant Smith testified that they could have obtained a warrant if necessary and that there were no exigent circumstances.  However, the AUSA and Special Agent Pope agreed that no warrant was required because the property was an "open field" not afforded protection under the Fourth Amendment.  Thus, law enforcement

officers cut a lock on the gate to the property and entered the land in all-terrain vehicles.  Law enforcement seized 594 marijuana plants and a clipboard that was in the smaller shed.

Perry was charged in a one-count indictment with manufacturing and possessing with the intent to distribute between 100 and 1,000 marijuana plants under 21 U.S.C. § 841 (a)(1).  Perry filed a motion to suppress the evidence seized by law enforcement.  At the suppression hearing, Perry conceded that the "open fields doctrine" permitted the search of the property, but maintained the doctrine did not allow the subsequent seizure without a warrant.  The Government, on the other hand, argued that no warrant was necessary under the open fields doctrine. The district court denied Perry's motion to suppress.  Perry conditionally pleaded guilty to the indictment, reserving his right to appeal the denial of his motion to suppress.  Perry timely appealed his conviction.

## DISCUSSION

On appeal, Perry contends the district court erred in denying his motion to suppress evidence seized on his property. Perry renews his argument that, while the aerial search of the land was permissible under the open fields doctrine, the warrantless seizure of his property violated the Fourth Amendment.

In reviewing a ruling on a motion to suppress made after a suppression hearing, we accept the trial court's factual findings

4

unless they are clearly erroneous or influenced by an incorrect analysis of the law, and review conclusions of law *de novo*. *United States v. Alvarez*, 6 F.3d 287, 289 (5th Cir. 1993); *United States v. Maldonado*, 735 F.2d 809, 814 (5th Cir. 1984). In addition, this Court "view[s] the evidence in the light most favorable to the prevailing party." *United States v. Piaget*, 915 F.2d 138, 140 (5th Cir. 1990). As Perry challenges only the district court's legal conclusions, the issues in this case are reviewed *de novo*.

Under the exclusionary rule, "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of [an] illegal search and seizure." *United States v. Calandra*, 414 U.S. 338, 347 (1974) (citations omitted). Searches and seizures conducted by law enforcement, without prior approval by a judge or magistrate, are *per se* unreasonable unless the government can show that the search and seizure falls within one of the few specifically defined exceptions to the warrant requirement. *See Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993). The "open fields doctrine" provides one of those exceptions.

In *Hester v. United States*, 265 U.S. 57, 59 (1924), the Supreme Court held that "the special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers and effects,' is not extended to open fields." The Court

5

reaffirmed the open fields doctrine more recently in *Oliver v. United States*, 466 U.S. 170 (1984).  In *Oliver*, the Court found there can be no "search" of an open field within the meaning of the Fourth Amendment because society does not recognize an expectation of privacy in such areas – even when those areas are bounded by fences with "no trespassing" signs.  *Id*. at 178-81.

As a preliminary matter, we must determine the scope of the seizure at issue.  Perry contends that the seizure consisted not only of the confiscation of the marijuana plants and clipboard, but also included Special Agent Pope's landing of the helicopter on Perry's property, the cutting of the lock on the gate, and the entry of vehicles onto the land.  This argument is misplaced.  The entrance of law enforcement onto the land constituted a search of an open field rather than a seizure.  Such searches are not protected by the Fourth Amendment under the open fields doctrine as set forth in *Oliver*.

In *Oliver*, the Supreme Court held that Fourth Amendment protection does not extend to open fields, even when a government agent trespasses on land that is private property.  *Id.; see also Husband v. Bryan*, 946 F.2d 27, 29 (5th Cir. 1991).  *Oliver* involved two cases consolidated on appeal.  In both cases, law enforcement physically entered a defendant's property without a warrant.  In one case, the officers drove past a locked gate with a "No Trespassing" sign on it.  In the other case, the officers walked past the defendant's residence to reach the open land.

*Oliver*, 466 U.S. at 173-74.  The Supreme Court concluded these intrusions upon open fields did not implicate the Fourth Amendment and that no warrant was required.  Similarly, the agents in the instant case entered Perry's brushy, undeveloped property in order to search for the marijuana they had observed from the air.  Thus, the Government's physical entry onto Perry's property did not constitute a seizure, but was rather a legal search afforded no Fourth Amendment protection under the open fields doctrine.

Under the foregoing reasoning, the challenged seizure consisted only of the confiscation of the marijuana plants and the removal of a clipboard from one of the sheds.  Thus, we must next determine whether the warrantless seizure of those items violated Perry's rights under the Fourth Amendment.  Perry contends the seizure was illegal because it was not sanctioned under the open fields doctrine.  However, it is unnecessary for us to address this argument, as we find the plants and clipboard were legally seized under the "plain view doctrine."

It is well-established that under certain circumstances, officers may seize evidence in plain view without a warrant. *Horton v. California*, 496 U.S. 128, 134 (1990) (internal citation omitted).  The plain view doctrine will support a warrantless seizure if: (1) the officer was lawfully in the position from which the object was plainly seen; (2) the object was in plain view; (3) the object's incriminating nature was immediately

apparent – i.e., the officer had probable cause to believe the object was contraband or evidence of a crime; and (4) the officer had a lawful right of access to the object itself. *See id.* at 136-37; *United States v. Paige*, 136 F.3d 1012, 1023 (5th Cir. 1998); *United States v. Buchanan*, 70 F.3d 818, 826 (5th Cir. 1995). We find that the seizure in this case satisfies each of these elements.

The first element in this analysis requires the officers to have lawfully been in the position from which they viewed the contraband. Here, Sergeant Smith and Special Agent Pope each initially viewed the three patches of marijuana plants from the air and then entered Perry's property for a closer look. As discussed above, both the aerial searches and entry onto the property — which allowed the officers to plainly view the marijuana plants, the two sheds and certain of their contents — were legal under the open fields doctrine. Thus, the officers were lawfully in a position to observe the seized property.

To satisfy the second element under the plain view doctrine, the plants and clipboard on Perry's property must have been in plain view. The officers testified that they first identified the marijuana plants while flying over the field in a helicopter. Even more clear was their view of the plants once they had lawfully entered the property. Furthermore, Special Agent Pope and Sergeant Smith testified that the contents of the smaller shed, which included such items as the clipboard seized, were

8

plainly visible from the outside because that structure was not fully enclosed.  The officers stated the smaller shed was essentially open because it lacked a full wall on one side.  Under these circumstances, we find the plants and clipboard were in plain view of the officers.

The third element requires a showing that the incriminating nature of the marijuana plants and the clipboard was "immediately apparent".  For purposes of the plain view exception, the incriminating nature of an item is immediately apparent if the officers had probable cause to believe the item was contraband or evidence of a crime.  *See Buchanan*, 70 F.3d at 826.

Here, Special Agent Pope and Sergeant Smith were DEA and TDPS officers who each had substantial training and expertise in identifying marijuana.  Special Agent Pope had been part of the aerial surveillance suppression and eradication program of the DEA since 1994, and had been coordinator of that program since 1999.  He testified that since 1994, he had seen approximately several hundred marijuana cultivation sites per year.  Sergeant Smith was likewise experienced, having been employed in the narcotics division of TDPS for fourteen years, and having taught suppression schools with TDPS for much of that time.  Accordingly, we are satisfied that the officers had probable cause to believe the three fields of plants they identified from the air and on the ground consisted of marijuana contraband.  *See United States v. Raines*, 243 F.3d 419, 422 (8th Cir. 2001)

(noting that the plain view doctrine would have permitted an officer to seize marijuana plants in the defendant's backyard without a warrant, and that the officer's training and expertise made the incriminating nature of the plants "immediately apparent").

Sergeant Smith also seized a clipboard from the smaller of the two sheds on the property, which also contained products such as fertilizer and gardening tools. According to testimony of the officers, the clipboard appeared to be a kind of log concerning plant cultivation. Sergeant Smith testified that law enforcement saw no other evidence of gardening or plant cultivation on the property other than the fields of marijuana. Thus, Sergeant Smith concluded the objects contained within the smaller shed, including the clipboard, were being utilized in the cultivation of the marijuana seized on the property. We find that, based on his confiscation of 594 marijuana plants nearby and his experience in identifying marijuana-growing paraphernalia, Sergeant Smith had probable cause to believe the clipboard seized was evidence of a crime.

Under the fourth and last requirement of the plain view exception, we must determine whether the officers had a lawful right of access to the marijuana and clipboard. This element of the plain view doctrine protects individuals from warrantless seizures "in situations such as when an officer on the street sees an object through the window of a house, or when officers

10

make observations via aerial photography or long-range surveillance." *Paige*, 136 F.3d at 1024 (quoting *G & G Jewelry, Inc. v. City of Oakland*, 989 F.2d 1093, 1101 (9th Cir. 1992)). In those cases, the plain view doctrine does not justify a warrantless seizure because persons still retain an expectation of privacy, which requires a warrant for legal entry, upon their private premises. *See id.*

As explained at length above, however, the open fields doctrine dictates that Perry retained no such expectation of privacy in his rural property, and the physical entrance of DEA and TDPS officers onto his land was lawful without a warrant. *See Oliver*, 466 U.S. 170 (holding that searches involving the physical entrance of officers onto land were legal without a warrant because the defendants had no expectation of privacy in open fields); *see also Paige*, 136 F.3d at 1024. Therefore, the officers had a lawful right of access to the actual land where the marijuana and sheds were located. Further, we find that Perry had no reasonable expectation of privacy in an open shed that was visibly not a residence or within the curtilage of a residence, and that was located in an open field. Thus, the officers had a lawful right of access to the clipboard as well. Consequently, we conclude that under the plain view doctrine, the warrantless seizure of the marijuana plants and the clipboard did not violate the Fourth Amendment.

**CONCLUSION**

In summary, we hold that the Government's search of Perry's property, consisting of the aerial inspection and physical entry onto the land, was legal without a warrant under the open fields doctrine.  Further, the subsequent warrantless seizure of the marijuana and clipboard was lawful under the plain view exception to the warrant requirement.  Because the district court properly denied Perry's motion to suppress, we AFFIRM Perry's conviction.  AFFIRMED.