[Cite as *State v. Hawkins*, 2017-Ohio-715.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | CASE NO. 16 CO 0014 |
| VS. | ) | |
| | ) | OPINION |
| WILLIAM J. HAWKINS | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:    Criminal Appeal from the Court of Common Pleas of Columbiana County, Ohio
Case No. 15 CR 204

JUDGMENT:    Affirmed.

APPEARANCES:
For Plaintiff-Appellee

Attorney Robert Herron
Columbiana County Prosecutor
Attorney John Gamble
Chief Assistant Prosecutor
105 S. Market Street
Lisbon, Ohio 44432

For Defendant-Appellant

Attorney Edward Czopur
42 North Phelps Street
Youngstown, Ohio 44503

JUDGES:

Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Cheryl L. Waite

Dated: February 27, 2017

DeGENARO, J.

{¶1} Defendant-Appellant, William J. Hawkins, appeals the trial court judgment convicting him of possession of marijuana and sentencing him accordingly, following a no contest plea. On appeal, Hawkins argues the trial court erred by overruling his motion to suppress. As the trial court properly denied suppression the judgment of the trial court is affirmed.

**Facts and Procedural History**

{¶2} Hawkins was charged by secret indictment with one count each of cultivation of marijuana, R.C. 2925.04(A); and possession of marijuana, R.C. 2925.11(A), both fifth-degree felonies, following the discovery of marijuana and several growing marijuana plants in his St. Clair Township home.

{¶3} Hawkins filed a motion to suppress, challenging the warrantless entry of his home by police. At the suppression hearing, Detective-Sergeant Brian McKenzie, who was the first responding officer at the scene, testified that he was dispatched to Hawkins's home at approximately 10:49 a.m. on January 9, 2016, because of a call that came through via the non-emergency number for the St. Clair Township Police Department. That call was from a neighbor who reported that Hawkins's front door was left open. Det. McKenzie could not provide any other information relative to the contents of the neighbor's call including the name of the neighbor.

{¶4} Det. McKenzie arrived on the scene to find the front door "wide open" and no cars in the driveway. There is no indication as to how long the door had been open, however, the detective found it unusual. He announced his presence at the front door and received no response from inside the house. He unholstered his weapon, because he thought he could be dealing with a "burglary in progress."

{¶5} Upon reaching the open front door, he noticed a young dog inside the living room area, as well as a large amount of dog feces on the floor. It appeared the dog had not been outside for "a couple days." The dog was not barking. Det. McKenzie then announced himself again, entered the residence, and did a "courtesy sweep" of the living room and bedroom to locate and identify any other persons in the residence. The detective further noticed that the young dog was acting "really

skittish." Specifically, the dog did not attempt to leave the residence out the open door, and it acted as though it wanted to go back to the bedroom.

{¶6} Having been in similar situations in the past, Det. McKenzie said in light of the odd behavior by the dog he "thought maybe the homeowner was down."

{¶7} Although he did not see anyone in danger on the first floor, Det. McKenzie went upstairs "looking for the homeowner or somebody in there that maybe shouldn't be in the residence."

{¶8} During the sweep of the residence, Det. McKenzie observed, in plain view, in the living room and surrounding area and near the front door, drug abuse instruments and marijuana cigars, and he noticed the strong odor of marijuana coming from the same area. Det. McKenzie then performed a protective sweep of the basement, again announcing his presence before proceeding. In the basement, he observed two marijuana grow operations. Specifically, the rooms in the basement housed pots of marijuana plants at different stages of growth, as well as an irrigation system.

{¶9} Once Det. McKenzie had cleared the house and determined no one was home, he then secured the house, radioed the drug task force and the suspected marijuana (including additional marijuana found on the first floor) and grow implements were confiscated. Det. McKenzie said that all of the evidence was in plain view once he was inside the various rooms of the home. It is this evidence upon which the State based the indictment and which was the subject of the suppression motion.

{¶10} On cross, Det. McKenzie admitted that he did not hear the phone call from the neighbor that caused him to respond to Hawkins's home. Further, he did not know its contents other than the fact that a neighbor called on a non-emergency number regarding the open door. Det. McKenzie further admitted that he was not advised that any person at the home was injured or otherwise in peril. Nor did he notice any signs of forced entry and he did not check the perimeter of the home prior to entering. He did not hear any person inside the home when he approached the

front door. Finally, he conceded he did not write anything in his report about his concerns that the house was being burglarized or the strange behavior of the dog.

**{¶11}** The trial court denied the motion to suppress following the defendant's submission of a post-hearing brief on the issue. In so doing, the trial court relied upon the emergency aid exception to the warrant requirement.

**{¶12}** Thereafter, Hawkins entered a no contest plea to the charges in the indictment. After a sentencing hearing, the trial court merged the two charges and sentenced Hawkins on the possession charge—the count that the State elected to pursue—to four years of community control under intensive supervision, and a six-month driver's license suspension. .

### Emergency-Aid Exception/Exigent Circumstances

**{¶13}** In his sole assignment of error, Hawkins asserts:

The trial court erred in denying the motion to suppress as Appellant's rights against unreasonable search and seizure were violated by the warrantless entry to his home when no exigent circumstance applied.

**{¶14}** Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. Because the trial court is in the best position to evaluate witness credibility, an appellate court must uphold the trial court's findings of fact if they are supported by competent, credible evidence. *Id*. However, once an appellate court has accepted those facts as true, the court must independently determine as a matter of law whether the trial court met the applicable legal standard. *Id*.

**{¶15}** "The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution, protect individuals from unreasonable searches and seizures." *State v. Fasline*, 7th Dist. No. 12 MA 221, 2014-Ohio-1470, ¶ 13, citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); "[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment was directed." *Payton v. New York*, 445 U.S. 573, 585, 100 S.Ct. 1371

(1980).

**{¶16}** "When police conduct a warrantless search, the state bears the burden of establishing the validity of the search. Searches and seizures without a warrant are '*per se* unreasonable' except in a few well-defined and carefully circumscribed instances." (Emphasis sic) *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 98, citing *Coolidge v. New Hampshire* 403 U.S. 443, 454-455, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

**{¶17}** "One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury. 'The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal * * *.' " *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006), quoting *Mincey v. Arizona*, 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978).

**{¶18}** Accordingly, as this court has previously explained:

> "[T]he emergency aid exception allows officers to enter a dwelling without a warrant and without probable cause when they reasonably believe, based on specific and articulable facts, that [someone] is in need of immediate aid." *State v. Gooden*, 9th Dist. No. 23764, 2008–Ohio–178, ¶ 6. The case must be viewed through the eyes of a reasonable and prudent police officer acting in response to an emergency situation. *Id.*, citing 2 LaFave, Search & Seizure, § 6.6(a), p. 698. "The officer must be able to point to specific and articulable facts, which, taken with rational inferences from those facts, reasonably warrant intrusion into protected areas." *State v. White*, 175 Ohio App.3d 302, 2008–Ohio–657, 886 N.E.2d 904 ¶ 17 (9th Dist.). "Officers do not need ironclad proof of 'a likely serious, life-threatening' injury to invoke the emergency aid exception." *Michigan v. Fisher*, 558 U.S. 45, 49, 130 S.Ct. 546, 175 L.Ed.2d 410 (2009).

*State v. Stanley*, 7th Dist. No. 13 MA 159, 2014-Ohio-5636, ¶ 7.

**{¶19}** "During a warrantless emergency entry police may seize contraband which is in plain view." *State v. Hallam*, 2d Dist. No. 2012 CA 19, 2012-Ohio-5793, ¶ 20, quoting *State v. Overholser*, 2d Dist. Clark No. 96-CA-0073, 1997 WL 451473 (July 25, 1997), citing *Michigan v. Tyler*, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978); *Thompson v. Louisiana*, 469 U.S. 17, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984).

**{¶20}** Here, the detective entered and searched Hawkins' home without a warrant, during which time he discovered marijuana and a marijuana grow operation. The trial court ruled that the emergency aid exception applied to obviate the need for a warrant and Hawkins challenges this determination on appeal.

**{¶21}** In arguing that suppression was required, Hawkins relies on *State v. Hendrix*, 9th Dist. No. 27217, 2014-Ohio-3577. In *Hendrix*, police were alerted by a concerned neighbor that Hendrix's garage door had been left open for several days. Police entered the open garage and then entered the home through an unlocked man door that led from the garage to the house. Police began to search the house, explaining they wanted to ensure the homeowner did not need assistance and because there had been a rash of robberies in nearby towns. While searching the home, a marijuana grow operation was discovered.

**{¶22}** The Ninth District upheld the trial court's decision to grant suppression:

> We cannot conclude that the trial court erred in granting the motion to suppress. We appreciate that the officers had a concern that it was *possible* there was someone in need of assistance in the house or that there had been a burglary, but we cannot say that the circumstances, when viewed objectively, would lead one to reasonably believe that anyone in the house was in immediate need of aid.

*Id.* at ¶ 12.

**{¶23}** The court noted that at the time of the call, police did not know which

neighbor had called to report the open garage, and were unable to determine precisely how long it had been open. Moreover, although a mail carrier had indicated that the mail had not been picked up from the day before, he also stated that such behavior was not necessarily unusual. Finally, the officers did not notice any signs of forced entry or other emergency when walking around the house. And although there had been daytime burglaries in the city, the officer did not believe any of them had taken place in defendant's neighborhood. *Id.* at ¶ 12. The court concluded that "when objectively viewed, the exigencies of the situation were not so compelling as to render a warrantless entry and search reasonable under the circumstances." *Id.* at ¶ 13.

**{¶24}** The facts of *Hendrix* are distinguishable; an open garage door is different from an open front door to a house in the middle of winter, which Det. McKenzie found unusual. Further, when reaching the door, Det. McKenzie immediately noticed a young dog inside and a large amount of dog feces on the floor. He said the dog was acting "really skittish," and did not attempt to leave the residence through the open door, and it acted as though it wanted to leave the living room. Upon seeing the young dog behave like this, based upon his prior experience, he feared the homeowner "was down." These facts, taken together, distinguish this case from *Hendrix* and are enough to justify the detective's entry.

**{¶25}** The State cites the Second District's *Hallam*, *supra,* in support of its contention that the trial court here properly denied suppression. In *Hallam*, the deputy responded to the defendant's residence initially at the request of a third party who could not reach his ex-wife and children by phone, but believed they were at the residence and wanted police to check on them. *Id.* at ¶ 2; 14. Once he arrived at the home, however, the deputy observed several conditions that caused him to be concerned that there was an intruder inside the home or a victim requiring immediate aid. *Id.* at ¶ 11. First he noticed there were cars in the driveway, but no lights on inside, which he found odd. *Id.* at ¶ 3. He observed that the front door was slightly ajar, there was a broken window on the side of the garage, and the inside of the

residence appeared to be in disarray. *Id.* At that point, the deputy said he entered the residence to search for individuals in need of "emergency attention inside the residence." *Id.* at ¶ 5. Ultimately, as in the present case, he found the house unoccupied, and instead evidence of a marijuana grow operation in plain sight. *Id.* at ¶ 5-6.

**{¶26}** In overruling the defendant's motion to suppress in *Hallam*, the trial court appeared to defer to the deputy's belief that there could have been an ongoing emergency situation. *See id.* at ¶ 14. In other words, the trial court judged the deputy to be credible. Specifically, the trial court "found that 'exigent circumstances existed justifying the warrantless entry into defendant's home. Once in the home and during a walk through in an attempt to determine if there was someone in need of emergency assistance, the evidence regarding the cultivation of marijuana came into plain sight.' " *Id.* at ¶ 15.

**{¶27}** Applying the emergency aid exception, the Second District affirmed the trial court's decision denying suppression. The court framed the issue as being whether, under the "totality of the circumstances, [the deputy] had a reasonable belief that a burglary was in progress or had just occurred, or that there might be someone inside the home who was in danger or in need of prompt aid." *Hallam* at ¶ 22. The court "agree[d] with the trial court that exigent circumstances existed justifying [the deputy's] warrantless entry into the residence, based upon the sequential events leading up to the entry." *Id.*

**{¶28}** Here, we must also be mindful of the trial court's discretion to judge credibility of witnesses in suppression matters. *Burnside, supra* at ¶ 8. In both *Hallam* and this case, the trial court chose to believe the officer's testimony about his instincts—each officer feared the owner or occupant of the house was in some sort of danger in light of his observations upon arriving at the house.

**{¶29}** Accordingly, the trial court properly denied suppression, and the

judgment of the trial court is affirmed.

Donofrio, J., concurs.

Waite, J., concurs.