[Cite as *State v. Hambleton*, 2017-Ohio-7561.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | CASE NO. 16 CO 0028 |
| VS. | ) | |
| | ) | OPINION |
| BRETT L. HAMBLETON | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:      Criminal Appeal from the Court of
Common Pleas of Columbiana County,
Ohio
Case No. 2015 CR 433

JUDGMENT:                                            Affirmed.

APPEARANCES:
For Plaintiff-Appellee                            Attorney Robert Herron
Columbiana County Prosecutor
Attorney Tammie Riley Jones
Assistant Prosecutor
105 S. Market Street
Lisbon, Ohio 44432

For Defendant-Appellant                       Attorney Peter Horvath
P.O. Box 501
Lisbon, Ohio 44432

JUDGES:

Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Cheryl L. Waite

Dated: September 11, 2017

DeGENARO, J.

{¶1} Defendant-Appellant, Brett L. Hambleton, appeals the trial court's judgment denying Hambleton's motion to suppress. As Hambleton's assignment error is meritless, the judgment of the trial court is affirmed.

{¶2} Hambleton was indicted for illegal cultivation of marijuana, tampering with evidence and obstructing official business. Hambleton filed a motion to dismiss. This was amended to a motion to suppress five days later. Both pleadings contended that a search warrant was required before police entered Hambleton's property. At the beginning of the hearing the parties agreed that the only issue being heard was the initial entry onto the premises.

{¶3} The State presented the testimony of Detective Brett Grabman who was assigned full-time to the Columbiana County Drug Task Force and testified that he was participating in a marijuana eradication exercise. His function was to serve as a "ground asset." He received directions from a helicopter flying above in order to investigate potential marijuana growth.

{¶4} Grabman was notified that marijuana was in plain sight of the helicopter off of Stagecoach Road, and he was directed to a wooded area behind a green house. Initially there was confusion as to the location as officers passed the green house; the helicopter informed them that they passed the landmark. They went back to the green house and pulled into the driveway. Some officers parked on Stagecoach, and some parked in the driveway. The reason they did this "was because that was the landmark given and that was basically the quickest access to get to this wooded area."

{¶5} Grabman observed two men working on a deck that did not live at the house. Other agents tried to make contact with the residents of the house but nobody answered. It was later discovered that Hambleton was not the resident of this home on Stagecoach but Grabman later learned that Hambleton resided at an address on Calcutta Smith-Ferry Road. The wooded area where the marijuana was spotted was not near the roadway but surrounded by several homes in a very close proximity.

{¶6} Grabman and several others from various agencies, dressed in their respective uniforms, proceeded toward the wooded area. As they were walking in an

open field to the wooded area, one of the officers yelled "runner." The officers formed a perimeter and shouted "Police. Come out of there. Show us your hands." Grabman testified that the individual did not comply with their commands and that he visually identified the runner as a white male in his 50's. Grabman repeated that they had no idea who owned the property prior to this situation.

{¶7} Once they reached the wooded area, Grabman observed marijuana plants and Hambleton, who looked busy like "he was doing something."

{¶8} Suddenly Grabman observed a very large fire with flames over 20 feet in the air. Concerned for Hambleton's safety, Grabman ordered him to stop and "get away." Grabman later discovered a gas can next to the marijuana plants. Grabman observed Hambleton throwing plants onto the fire. He confronted Hambleton and performed a take-down maneuver on him and got him away from the fire. Hambleton stated to Grabman, with no prompting, that his wife had no knowledge of the marijuana and "that it was his and his medical supply." Hambleton acknowledged seeing the helicopter.

{¶9} Grabman estimated that Hambleton's house was several hundred feet from the wooded area, as was the green house. He stated, "You had to cross a field almost on all sides of it. It did not appear to be anybody's yard."

{¶10} On cross-examination, Grabman admitted that he later learned that the wooded area was located on Hambleton's property, and he had no search warrant. Grabman indicated that did attempt to make contact with the property owner but had no success. He stated that if the property owner had refused consent that he would have gotten a search warrant.

{¶11} On redirect Grabman stated that in his experience individuals will go into areas not owned by them and plant marijuana. Had Grabman not witnessed Hambleton burning the marijuana plants there would "have been no way to prove whose property this was, whose plants these were, I would have had no case."

{¶12} Hambleton's motion to suppress was denied, and he entered a no contest plea to the three counts contained in the indictment. Hambleton was sentenced to a total of twelve months in a state correctional facility, which the trial

court stayed pending this appeal.

**{¶13}** In his sole assignments of error, Hambleton asserts:

In the absence of a search warrant, a physical intrusion onto the defendant's land is unlawful.

**{¶14}** "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. Because the trial court is in the best position to evaluate witness credibility, an appellate court must uphold the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* However, once an appellate court has accepted those facts as true, the court must independently determine as a matter of law whether the trial court met the applicable legal standard. *Id.*

**{¶15}** "The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution secure an individual's right to be free from unreasonable searches and seizures." *State v. Telshaw*, 195 Ohio App.3d 596, 2011-Ohio-3373, 961 N.E.2d 223, ¶ 12 (7th Dist.). "When police conduct a warrantless search, the state bears the burden of establishing the validity of the search. Searches and seizures without a warrant are '*per se* unreasonable' except in a few well-defined and carefully circumscribed instances." (Internal citations omitted) *State v. Hawkins*, 7th Dist. No 16 CO 0014, 2017-Ohio-715, ¶ 16. If the Fourth Amendment does not protect an area or item, it is not necessary to determine whether an exception to the warrant requirement applies. For example, there is no recognized privacy expectation in an open field outside a residence. See *Oliver v. United States*, 466 U.S. 170, 180–181, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984).

**{¶16}** Fourth Amendment protections extend not only to a person's home but to the curtilage surrounding it. *Id.* At common law, curtilage is the area which extends the activity associated with the "sanctity of a man's home and the privacies of life." *Id.* This Court recently stated there are four factors to consider in determining whether a space is considered part of the home's curtilage: "(1) the proximity of the area to the home; (2) whether the area is included within an enclosure surrounding the home; (3)

the nature of the uses to which the area is put; and (4) the steps taken to protect the area from observation by passersby." *State v. Albright*, 7th Dist. No 14 MA 0165, 2016-Ohio-7037, ¶ 25.

**{¶17}** However, there is no recognized privacy expectation in an open field outside a residence. *Oliver*, *supra*, 180–181. In such cases, there is no search because the police can observe the item without a physical intrusion into a constitutionally protected area. *State v. Harris*, 98 Ohio App.3d 543, 547, 649 N.E.2d 7 (8th.Dist 1994).

**{¶18}** Hambleton concedes that police did not need a warrant for their actions in the helicopter, but contends that once marijuana was suspected a search warrant was required. The State responds that a warrant was not required on the basis of the open fields doctrine.

**{¶19}** The Fifth District recently decided a case with nearly identical facts. In *State v. Woolley*, 5th Dist. No. 16-COA-003, 2017-Ohio-576, police seized marijuana plants from a wooded area and from potted marijuana near the residence.

> In this case, the officers' decision to approach appellant's residence arose from the spotting of marijuana plants from the air. Air surveillance generally does not require a warrant. *State v. Little*, 183 Ohio App.3d 680, 2009–Ohio–4403, 918 N.E.2d 230, ¶ 22 (2nd Dist.), appeal dismissed, 125 Ohio St.3d 1458, 2010–Ohio–2753, 928 N.E.2d 735. Marijuana plants spotted from a helicopter may be held to be within "plain view." See, *United States v. Perry*, 95 Fed.Appx. 598, 602 (5th Cir.2004). Whether the plants were in an "open field" or within the curtilage of the home, though, affects the analysis, as it did for the trial court in the instant case. See, *State v. Jones*, 6th Dist. Lucas Nos. L–00–1231, L–00–1232, L–00–1233, 2003–Ohio–219, ¶ 88. Here, the trial court allowed the evidence of the growing marijuana in the woods but suppressed the potted marijuana because the latter was within the curtilage of the residence.

The helicopter view alone does not support entry upon appellant's property where he has a reasonable expectation of privacy. "While warrantless aerial *observations* may be permissible, warrantless *seizures* without exigent circumstances are not permissible." (emphasis in original) *State v. Vondenhuevel*, 3rd Dist. Logan No. 8–04–15, 2004–Ohio–5348, ¶ 16, citing *State v. Wangul*, 8th Dist. No. 79393, unreported (Feb. 14, 2002) and *State v. Staton*, 2d. Dist. No. 90–CA–62, unreported (Mar. 15, 1991). Plain view alone is not enough to justify the warrantless seizure of evidence, although "[i]ncontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause." *Id.*, citing *Coolidge v. New Hampshire*, 403 U.S. 443, 468, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Even where the object is obviously contraband, the U.S. Supreme Court has repeatedly "enforced the basic rule that the police may not enter and make a warrantless seizure." *Id.*

The first physical entry by law enforcement onto the premises was driving down the driveway of appellant's residence. We have previously found officers are permitted to enter upon the driveway of a house and walk up to the front door to speak to occupants about complaints that they were growing marijuana in the garage. See, *State v. Schorr*, 5th Dist. Fairfield No. 13–CA–45, 2014–Ohio–2992, ¶ 26, citing *State v. Cook,* 5th Dist. Muskingum Nos. 2010–CA–40, 2010–CA–41, 2011–Ohio–1776, ¶ 67.

Also, the officers' entry into the wooded area away from the home is not a constitutional violation. The marijuana growing in the woods is subject to the open-fields doctrine first enunciated by the United States Supreme Court in *Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924), wherein the court found that even though there

had been a trespass by police officers, no illegal search or seizure occurred because the Fourth Amendment protection afforded to people in their "persons, homes, papers, and effects" is not extended to "open fields." *Id.* at 59. Government intrusion upon open fields is not an "unreasonable search" as proscribed by the Fourth Amendment. *State v. Paxton*, 83 Ohio App.3d 818, 824, 615 N.E.2d 1086 (6th Dist.1992), citing *Oliver v. U.S.,* 466 U.S. 170, 177, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984).

*Woolley*, ¶ 25-28.

{¶20} Applying the *Albright* factors, the wooded area cannot be considered curtilage. The wooded area was hundreds of feet away from Hambleton's home. The area was not included within an enclosure surrounding the home. There was no use of the wooded area for any designated purpose, and no steps were taken to protect the area from observation. As such, there was no expectation of privacy in the marijuana growing in the woods, which was properly subject to warrantless seizure. Accordingly, Hambleton's sole assignment of error is meritless and the judgment of the trial court is affirmed.


Donofrio, J., concurs.

Waite, J., concurs.