[Cite as *State v. Stevens*, 2023-Ohio-889.]

COURT OF APPEALS
COSHOCTON COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO

     Plaintiff-Appellee

-vs-

MELANNIS L. STEVENS

     Defendant-Appellant

JUDGES:
Hon. William B. Hoffman, P.J.
Hon. John W. Wise, J.
Hon. Andrew J. King, J.

Case No. 2022CA0017

O P I N I O N

CHARACTER OF PROCEEDINGS:     Appeal from the Coshocton County Court
of Common Pleas, Case No. 21-CR-0054

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     March 17, 2023

APPEARANCES:

For Plaintiff-Appellee

JASON GIVEN
Coshocton County Prosecuting Attorney

BENJAMIN E. HALL
Assistant Prosecuting Attorney
318 Chestnut Street
Coshocton, Ohio 43812

For Defendant-Appellant

GEORGE URBAN
116 Cleveland Avenue, N.W.
Suite #808
Canton, Ohio 44702

*Hoffman, P.J.*

{¶1} Defendant-appellant Melannis Stevens appeals the judgment entered by the Coshocton County Common Pleas Court convicting her following her pleas of no contest to two counts of failure to stop after an accident (R.C. 4549.02(A)(2),(B)(2)(a)), two counts of vehicular assault (R.C. 2903.08(A)(2)(b), (C)(2)), and one count of tampering with evidence (R.C. 2921.12(A)(2),(B)), and sentencing her to an aggregate prison term of eighty-four months. Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2} On March 27, 2021, a motor vehicle accident occurred on State Route 751 in Coshocton County, near the intersection with Township Road 250. The victims were traveling northbound on State Route 751 when they were struck by a dark-colored sedan travelling southbound, which crossed the center line of travel. The victims suffered life-threatening injuries. The dark-colored sedan fled the scene of the accident.

{¶3} Police officers investigating the accident collected debris from the scene. After examining the paint transfer from the vehicles involved in the crash, they determined the dark-colored sedan was a black 2016-2018 Nissan Altima.

{¶4} A data base search of the Coshocton County Sheriff's Department revealed deputies had contact with a 2016-2018 Nissan Altima about a month prior to the accident. Appellant was the registered owner of the vehicle. Detective Seth Andrews learned Appellant lived at 7705 Euga Road in Guernsey County, near the scene of the accident.

{¶5} Det. Andrews decided to fly a drone over the property encompassing 7705 Euga Road out of concern the Nissan was being scrapped at the location in order to hide evidence. On March 30, 2021, Det. Andrews traveled to a location adjacent to the 7705

Euga Road address, approximately 200 yards north of the primary driveway to the property.  The day was clear and sunny.

**{¶6}**     Det. Andrews launched a DJI Mavic 2 Enterprise drone in an effort to find the black Nissan.  The detective had two days of training and had logged approximately 1,600 minutes of flight time with the specific drone used on March 30.  The drone had a camera similar to the type of camera found on a cell phone.  The maximum altitude for the drone is 400 feet, or Class G airspace, as designated by the FAA.

**{¶7}**     Det. Andrews preset the drone to a maximum altitude of 396 feet.  He operated the drone over the property at altitudes between 300 and 396 feet, taking pictures of the property.  The pictures showed several acres of property, partially wooded, with two driveways.  The property included a two-story house, a garage, and a number of vehicles in various stages of disrepair near a fire pit.  The photos showed a black Nissan Altima in the wooded area behind the home and behind the fire pit, approximately 280 feet from the residence and 80 feet from a neighboring parcel of real estate.  A closeup shot of the vehicle showed it was missing a door, and other parts were on the ground near the vehicle and near a burn pile.  The vehicle was not covered, and the trees were defoliated because it was still winter, providing no coverage for the vehicle from the air.  The information obtained from the drone search was used to obtain a search warrant for the property.

**{¶8}**     Appellant was indicted by the Coshocton County Grand Jury on two counts of failure to stop at the scene of an accident, two counts of vehicular assault, and one count of tampering with evidence.  The two charges of failure to stop at the scene of an accident were indicted as felonies rather than misdemeanors because the indictment

included additional allegations the accident resulted in "serious physical harm to a person."

**{¶9}** Appellant filed a motion to suppress, arguing the warrantless drone search of the property was unconstitutional. Following a hearing, the trial court overruled the motion, finding the vehicle was not within the curtilage of the home and was therefore subject to the "open fields" doctrine, in which Appellant did not have a reasonable expectation of privacy. The trial court held even if the open fields doctrine did not apply in this case, the search was not unconstitutional because the officer was operating the drone in public navigable airspace in a nonintrusive manner, which does not violate the Fourth Amendment.

**{¶10}** Appellant entered pleas of no contest to all five counts of the indictment, and was convicted. The trial court sentenced Appellant to an aggregate term of incarceration of eighty-four months. It is from the May 24, 2022 judgment of the trial court Appellant prosecutes her appeal, assigning as error:

I. THE TRIAL COURT ERRED IN ACCEPTING A NO CONTEST PLEA WITHOUT A PROPER RECITATION OF THE FACTS WHEN THE INDICTMENT FAILED TO LIST THE SPECIFIC INJURIES THAT ELEVATED THEM TO "SERIOUS INJURIES."

II. THE TRIAL COURT ERRED IN NOT GRANTING THE APPELLANT'S MOTION TO SUPPRESS.

I.

{¶11} In her first assignment of error, Appellant argues the trial court erred in finding her guilty upon her pleas of no contest to failure to stop at the scene of an accident as felony offenses without an explanation of the evidence supporting the allegations in the indictment the victims suffered serious physical harm.

{¶12} Pursuant to Crim.R. 11(B)(2), "[t]he plea of no contest is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the indictment, information, or complaint * * *." The no contest plea constitutes a stipulation the judge may make a finding of guilty or not guilty from the explanation of circumstances. R.C. 2937.07. However, in order to convict a defendant who has entered a no contest plea, the State must provide an explanation of circumstances to maintain the offense. *State v. Puterbaugh*, 142 Ohio App.3d 185, 755 N.E.2d 359, 361–62 (2001) "[The] explanation is sufficient if it supports all the essential elements of the offense." *Id*. at 189. Therefore, a defendant who pleads no contest should be found not guilty where the State's explanation of the circumstances does not establish all of the elements of the offense. *Id*.

{¶13} In the instant case, Appellant entered a plea of no contest to each individual count of the indictment.  Following the entry of the no contest pleas, the following colloquy occurred:

THE COURT:  Mr. Meranda, on behalf of your client, do you waive further presentation of any evidence with regard to Counts 1 through 5 in Case 21-CR-0054 and Count 1 in Case 21-CR-0085?

MR. MERANDA:  I would, Your Honor.

THE COURT:  Thank you.  And are you doing that with the consent of your client?

MR. MERANDA:  Yes, Your Honor.

THE COURT:  And, Ms. Stevens, is that correct?  You consent to the waiver – the further presentation of evidence regarding all six charges?

THE DEFENDANT:  Yes, sir.

**{¶14}**  Tr. (Plea Hrg.) 16.

**{¶15}**  We find Appellant, having waived the State's presentation of evidence, has waived any error in the failure of the State to present a detailed explanation of the circumstances supporting the allegation of serious physical harm to the victims.  Appellant argues in her brief her waiver was insufficient, and the court erred when it did not require the State to proffer some support for the serious physical harm allegation.  Appellant's Brief, p. 6.  Appellant cites no legal authority for this proposition, and we decline to adopt a rule requiring the trial court to force the State to proffer an explanation of the circumstances after the defendant has waived such proffer.  We find Appellant's plea of no contest to the indictment, which included allegations of serious physical harm, coupled with her waiver of further explanation of the evidence by the prosecutor, was sufficient to allow the trial court to convict her of all charges.

**{¶16}**  The first assignment of error is overruled.

## II.

**{¶17}**  In her second assignment of error, Appellant argues the trial court erred in overruling her motion to suppress.  She argues the warrantless search of the property by

the drone did not fall within any recognized exception to the requirement of a warrant, and she further argues Det. Andrews was not federally licensed to fly the drone.

**{¶18}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. *See State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. *See Burnside, supra; Dunlap, supra; State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist. 1998); *State v. Medcalf,* 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. *See Burnside, supra, citing State v. McNamara,* 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist. 1997); *See, generally, United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). That is, the application of the law to the trial court's findings of fact is subject to a de novo standard of review. *Ornelas, supra.*

**{¶19}** Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas, supra* at 698, 116 S.Ct. at 1663.

**{¶20}** Appellant did not raise the issue of Det. Andrew's lack of a license to fly the drone in her motion to suppress, nor did the trial court consider the issue. "It is well-

settled law that issues not raised in the trial court may not be raised for the first time on appeal because such issues are deemed waived." *Columbus v. Ridley,* 2015-Ohio-4968, 50 N.E.3d 934, ¶ 28 (10th Dist.), *quoting State v. Barrett*, 10th Dist. Franklin No. 11AP-375, 2011-Ohio-4986, 2011 WL 4489169, ¶ 13; *see State v. Comen*, 50 Ohio St.3d 206, 211, 553 N.E.2d 640 (1990). This principle also applies to arguments not asserted either in a written motion to suppress or at the suppression hearing. *Id.* We find Appellant cannot assert her argument Det. Anderws was not properly licensed to fly the drone for the first time on appeal, as the State did not have the opportunity to demonstrate compliance with licensing requirements and the trial court did not have an opportunity to consider the issue.

**{¶21}** Appellant also argues contra to the trial court's findings, the warrantless search by the drone did not fall into any recognized exception to the requirement of a warrant.

**{¶22}** The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception to the warrant requirement applies. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The government may not intrude into areas where legitimate expectations of privacy exist. In determining whether the Fourth Amendment protects against a search, "the rule that has emerged * * * is that there is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'" *Katz*, 389 U.S. at 361 (Harlan, J., concurring). *See Rakas v. Illino*is, 439

U.S. 128, 143–144, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *State v. Williams*, 73 Ohio St.3d 153, 166–167, 652 N.E.2d 721 (1995).

**{¶23}** The trial court found the car was not located within the curtilage of the house, and thus the "open fields" doctrine applied; therefore, Appellant did not have a reasonable expectation of privacy in the area where the car was found. Accordingly, police were not required to have a warrant to search the wooded area where the car was located, whether such search was by drone or on foot.

**{¶24}** "The curtilage is an area around a person's home upon which he or she may reasonably expect the sanctity and privacy of the home. For Fourth Amendment purposes, the curtilage is considered part of the home itself." *Oliver v. United States*, 466 U.S. 170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984). The only areas of the curtilage where officers may lawfully go are those impliedly open to the public, including walkways, driveways, or access routes to the house. *State v. Cook*, 5th Dist. Muskingum Nos.2010–CA–40, 2010–CA–41, 2011–Ohio–1776, ¶ 65, *citing State v. Birdsall*, 6th Dist. Williams No. WM–09–016, 2010–Ohio–2382, ¶ 13. Because the curtilage of a property is considered to be part of a person's home, the right of the police to come into the curtilage is highly circumscribed. *State v. Woljevach,* 160 Ohio App.3d 757, 2005–Ohio–2085, 828 N.E.2d 1015, at ¶ 29. "The extent of a home's curtilage is resolved by considering four main factors: (1) the proximity of the area claimed to be curtilage to the home; (2) whether the area is included within an enclosure surrounding the home; (3) the nature of the use to which the area is put; and (4) the steps taken to protect the area from observation by passersby." *State v. Doyle*, 5th Dist. No. 16CA05, 2016-Ohio-5742, 70 N.E.3d 981, ¶ 15.

{¶25} However, in *Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924), the United States Supreme Court found even though there had been a trespass by police officers, no illegal search or seizure occurred because the Fourth Amendment protection afforded to people in their "persons, homes, papers, and effects" is not extended to "open fields." *Id.* at 59. Government intrusion upon open fields is not an "unreasonable search" as proscribed by the Fourth Amendment. *State v. Paxton*, 83 Ohio App.3d 818, 824, 615 N.E.2d 1086 (6th Dist.1992), citing Oliver v. U.S., 466 U.S. 170, 177, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984).

{¶26} In *State v. Wooley*, 5th Dist. Ashland No. 16-COA-003, 2017-Ohio-576, police initially spotted marijuana growing in both a wooded area away from a residence and in pots in the home's backyard by airplane surveillance. Police then entered the property without a warrant to seize the plants. After finding no Fourth Amendment violation in the warrantless search by airplane, we then addressed whether the subsequent warrantless entry on foot was in violation of the Fourth Amendment. We found he marijuana growing in the woods was subject to the open fields doctrine. *Id.* at ¶28. However, we found the potted marijuana plants in the backyard of the resident were located within the curtilage of the home, and the warrantless search and seizure of the plants in the backyard was in violation of the Fourth Amendment. *Id.* at ¶30.

{¶27} In the case sub judice, we find the trial court did not err in finding the area where the vehicle was located was not within the curtilage of the house. The vehicle was located approximately 280 feet from the house and 80 feet from neighboring property. There was no fencing on the property. The photographs show a burn pit and junk vehicles located behind the house, and the vehicle in question located even farther from the house,

in a wooded area. Because the vehicle was not located in the curtilage of the home, we find Appellant did not have a reasonable expectation of privacy in the area based on the open fields doctrine, and officers therefore could search the area without a warrant.

**{¶28}** Appellant appears to argue the use of the drone is more intrusive than a search on foot, and is in violation of the Fourth Amendment even in an open field where the officer could have lawfully entered and searched on foot without a warrant. We disagree. This Court has previously recognized air surveillance generally does not require a warrant. *Wooley, supra,* at ¶25, *citing State v. Little*, 183 Ohio App.3d 680, 2009–Ohio–4403, 918 N.E.2d 230, ¶ 22 (2nd Dist.), *appeal dismissed,* 125 Ohio St.3d 1458, 2010–Ohio–2753, 928 N.E.2d 735.

**{¶29}** Likewise, the United States Supreme Court has found no violation of the Fourth Amendment in several cases involving the use of air surveillance. In *Dow Chem. Co v. United State*s, 476 U.S. 227, 106 S. Ct. 1819, 90 L.Ed 2d 226, the court held aerial photographs of Dow's plant complex from an aircraft lawfully in public navigable airspace was not a search prohibited by the Fourth Amendment. The EPA did not use a unique sensory device not available to the public, but rather used a conventional, albeit precise, commercial camera commonly used in mapmaking, and the photographs were not so revealing of intimate details as to raise constitutional concerns. *Id.* at 238.

**{¶30}** Similarly, in *California v. Ciraolo*, 476 U.S. 207, 106 S. Ct. 1809, 90 L.Ed 2d 210, officers used an airplane flying at an altitude of 1,000 feet over the defendant's home after receiving a tip he was growing marijuana in his backyard. The area was fenced, but from the air officers were able to observe marijuana with the naked eye. Despite the fact the plants were in the curtilage of the home, the court held the warrantless air surveillance

did not require a warrant because anyone happening to fly over the defendant's home could glance down and see the marijuana plants growing. The court specifically noted the search took place within public navigable airspace, in a physically nonintrusive manner. *Id.* at 213.

**{¶31}** Finally, in *Florida v. Riley,* 488 U.S. 445, 109 S. Ct. 693, 102 L.Ed. 2d 835 (1989), police received an anonymous tip marijuana was being grown on the defendant's property. The investigating officer discovered he could not observe the contents of a greenhouse on the property from ground level. The greenhouse was enclosed on two sides and obscured from view on the other sides by trees, shrubs, and a residence. The officer then circled twice over the property in a helicopter at an altitude of 400 feet and made naked-eye observations of marijuana plants through openings in the greenhouse roof. The court found no violation of Riley's Fourth Amendment rights despite the fact he had taken precautions to shield the greenhouse from view at ground level. The court concluded the helicopter was flying within navigable airspace pursuant to FAA regulations for helicopters, there was no evidence the helicopter interfered with Riley's use of the greenhouse or other parts of the curtilage of the residence or intimate details were observed, and there was no evidence of undue noise, dust, wind, or threat of injury. *Id.* at 451-52.

**{¶32}** While the use of drones as a tool for criminal investigations is currently an undeveloped area of the law, we find no reason to distinguish the use of the drone in this case from other air surveillance. Nothing in the record suggests the drone in the instance case, flying at an altitude of 300-396 feet, is more intrusive than the helicopter flying at 400 feet in *Riley, supra.* The vehicle was not located in the curtilage of the home, and no

steps were taken to hide the vehicle from view, either at ground level or by air. The camera attached to the drone was similar to a cell phone or I-pad camera, both of which were readily available to the public, and the drone itself was a model readily available to the public. The drone was flying in Class G airspace within FAA regulations. We find the trial court did not err in finding the warrantless flyover by the drone in this case did not violate the Fourth Amendment.

{¶33} The second assignment of error is overruled.

{¶34} The judgment of the Coshocton County Common Pleas Court is affirmed.

By: Hoffman, P.J.

Wise, J., concurs and

King, J., concurs in part; dissents in part

*King, J. concurring in part, dissenting in part,*

{¶ 35} I concur in judgment because this case is resolved by the open fields doctrine. I respectfully dissent from the majority's assertion in paragraph 32 that "we find no reason to distinguish the use of the drone in this case from other air surveillance." As the majority notes, this is an emerging area of the law and there is reason to think there may indeed be material distinction.

{¶ 36} In *Florida v. Riley*, 488 U.S. 445, 452, 109 S.Ct. 693, 102 L.Ed.2d 835 (1989), five members of the court agreed surveillance by helicopter over a subject's property at an altitude of at least 400 feet did not require a search warrant. The plurality of the court focused on whether law enforcement had the legal right to be in the airspace it occupied. *Id.* at 450-451. The plurality's consideration of the lawfulness of law enforcement's presence focused on whether law enforcement had violated FAA rules or other laws. *Id.* at 451-452.

{¶ 37} One can question whether *Riley* controls the federal constitutional analysis for aerial drones because there are obvious differences in the technologies. True, they do share some superficial similarities, but the differences are significant. It would be inapt to conclude a dairy cow is a race horse because both are mammals that eat grass. Compared to a helicopter, a drone is small, quiet, less noticeable, remotely operated, and maneuverable in small places. Further, a drone is seemingly able to conduct more intrusive surveillance than the naked eye could conduct from a helicopter. In other words, the technology deployed here is qualitatively different than the helicopter examined in *Riley*.

{¶ 38} In reviewing the interplay of technology and the Fourth Amendment, the United States Supreme Court held one of the key considerations is whether the technology allows the government to explore details "that would previously have been unknowable without physical intrusion." *Kyllo v. United States*, 533 U.S. 27, 40, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001). When certain technology is used this way, it is a search and thus subject to the warrant requirement. *Id.* In the *Kyllo* case, it was the use of thermal imaging to see through the walls into a home.

{¶ 39} Here, the operation of the drone appears superficially consistent with the operation of the helicopter in *Riley*. On the other hand, the qualities of the drone allow it to obtain details that would be "unknowable without a physical intrusion" *e.g.,* flying over a fence and then photographing license plates or people or objects through windows or open doorways of homes, barns, and accessory buildings. The use of the device in that way to surveil a house or curtilage would be equivalent to a physical intrusion and thus a search requiring a warrant. Thus, the court should remain conscious of the difference in the technologies and not give carte blanch to the use of aerial drones merely because of *Riley*.

{¶ 40} The United States Supreme Court returned to the issue of the deployment of newer technologies in *United States v. Jones*. 565 U.S. 400, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012). In *Jones*, law enforcement attached a GPS surveillance device to a vehicle to track the subject's movements. *Id.* at 403. This device was attached while the vehicle was parked in a public parking lot. *Id.* Yet, the court held, "[t]he Government physically occupied private property for the purpose of obtaining information" and concluded there was a Fourth Amendment violation. *Id.* at 404-405.

{¶ 41} The *Jones* analysis was not grounded in the *Katz* line of cases, rather the "common-law trespassory test." *Id. Jones* went on to say by applying 18th-century understandings of trespass to the case, the court was setting forth the minimum protection afforded an individual. *Id.* at 405-407. Moreover, the court stated this minimum protection was in addition to whatever protections might be afforded under *Katz. Id.* at 411 ("What we apply is an 18th-century guarantee against unreasonable searches, which we believe must provide *at a minimum* the degree of protection it afforded when it was adopted.") (Emphasis sic.)

{¶ 42} The *Jones* test applied to drone surveillance would suggest a different result than under the plurality's approach to helicopter aerial surveillance addressed in *Riley*. Under the common law ad coelum doctrine, a property owner's rights extend above and below the surface. Cf. *United States v. Causby,* 328 U.S. 256, 260-261, 66 S.Ct.1062, 90 L.Ed. 1206 (1946). It follows then, if the surreptitious attachment of a GPS tracking device to a vehicle parked in a public place is a trespass that would be recognized under the common law, then it would seem flying a drone that physically intrudes into a property owner's common law airspace should also be recognized as a trespass under *Jones*.

{¶ 43} The *Jones* court did caution that the boundaries of the Fourth Amendment are not co-extensive with common law understanding of property rights rules (and thus trespass). *Jones*, 545 U.S. at 951. The court then went on to re-affirm its earlier holding in *Oliver v. United States*, 466 U.S. 170, 183, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984), which concluded a common law trespass into an open field was not a protected area under the Fourth Amendment.

{¶ 44} With regard to *Causby*, *supra,* the court's casual rejection of the ad coelum doctrine was dicta, as the underlying claim arose under the Fifth Amendment. *Causby* at 258. Moreover, the court recognized it was possible for the aerial intrusion to be so severe that a taking occurs. *Id.* at 261. This implies some property interest remains despite federal regulations. Further, *Jones* also recognized a warrant can be required even when the physical intrusion takes place in a public area. Assuming arguendo all regulated airspace is a public place, *Jones* still suggests a warrant would be required if that intrusion was into a constitutionally protected area.

{¶ 45} Accordingly, whether a warrant is required to operate an aerial drone in federally regulated airspace now turns on whether the intrusion was into a constitutionally protected area.

{¶ 46} With regard to fixed wing aircraft surveillance, the United States Supreme Court has held there is no constitutional protection when an airplane flies in commercially navigable airspace. *California v. Ciraolo*, 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986); *Dow Chemical Co. v. U.S.,* 476 U.S. 227, 106 S.Ct. 1819, 90 L.Ed.2d 226 (1986). As the court observed, it would be incongruent to subject the government to a higher burden, when any member of the public was free to look out the window of a commercial aircraft and observe the same. *Ciraolo* at 213-214. But the fractured nature of the *Riley* decision, compounded with the *Jones* decision, leaves open the question of whether the airspace below 400 feet, within which a drone can legally operate, is constitutionally protected and thus subject to the warrant requirement.

{¶ 47} The plurality in *Riley* made much out of the helicopter's legal right to be in the airspace because of FAA regulations. *Riley*, 488 U.S. at 450-451. Yet, this approach

was rejected by a majority of the *Riley* court, in a series of separate opinions (O'Connor, J., concurring, Brennan, J., dissenting, and Blackmun, J., dissenting). Moreover, that same majority appeared to broadly agree (though for different reasons) the Fourth Amendment provides protection, to varying degrees, in the airspace below 400 feet. O'Connor, J., concurrence at 455, Brennan, J., dissent at 460, and Blackmun, J., dissent at 467.

{¶ 48} Thus, the parameters of Fourth Amendment protections a property owner has in the airspace over the home and curtilage in which an aerial drone can lawfully operate was left undefined by *Riley*. But *Causby* and *Riley*, along with the technological differences of an aerial drone to a helicopter, lead me to conclude there is both some property right in that airspace and some constitutional protection against surveillance in that airspace.

{¶ 49} While this case is resolved by the open fields doctrine, a warrant may well be required for aerial drone surveillance of the curtilage or home. The area defined as the curtilage is protected under the Fourth Amendment, thus requiring a warrant for government actors to enter the property. *See Collins v. Virgina*, 138 S. Ct. 1663, 1666, 201 L.Ed.2d 9 (2018), citing *Florida v. Jardines*, 569 U.S. 1, 11, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013). It follows that if some portion of the airspace above it is also constitutionally protected, under either *Katz* or *Jones*, then a warrant would be required. Further, Article I, Section 14, of the Ohio Constitution may afford property owners protection above what the Fourth Amendment provides.

{¶ 50} For these reasons, I concur in judgment, but partially dissent from the majority's opinion.